186 N.J. Super. 246 (1982)
452 A.2d 469
IN THE MATTER OF THE ESTATE OF DORA POLEVSKI, DECEASED.
Superior Court of New Jersey, Appellate Division.
Argued September 21, 1982.
Decided October 13, 1982.
*247 Before Judges FRITZ, JOELSON and PETRELLA.
Jack L. Cohen argued the cause for appellant Indemnity Insurance Company of North America (Bendit, Weinstock & Sharbaugh, attorneys; James F. Keegan of counsel and on the brief).
James M. Cutler argued the cause for respondent Cyrus J. Bloom, successor substituted trustee.
Ronald M. Sturtz appeared on behalf of Pnina Bar-Yehuda Strauch (Hannoch, Weisman, Stern, Besser, Berkowitz & Kinney, attorneys), and relied on the brief submitted by the successor substituted trustee.
The opinion of the court was delivered by PETRELLA, J.A.D.
Indemnity Insurance Company of North America (hereafter Indemnity) appeals from a judgment enforcing a supplementary *248 $50,000 surety bond which was issued in connection with a trust under the 1961 will of Dora Polevski. Indemnity claims that the alleged concealment of material facts by the beneficiary under the trust was a fraud entitling it to discharge on the second bond that was issued, and alternatively that it should not be liable on the bond because it was not enforceable pursuant to R. 1:13-3. The trial judge in two oral opinions held Indemnity liable on the $50,000 bond. We affirm.
The original trustee named in the will died in 1976 and the trustee's son, Richard Feldman, was substituted as trustee. One of the beneficiaries under the trust, Pnina Bar-Yehuda Strauch (Strauch), sister of the settlor-testatrix, instituted an action against Feldman on March 7, 1980 to compel an accounting. See R. 4:86-3 and 4:67. Feldman was ordered to account. Indemnity was not named as a defendant or party in interest in that action. Unlike an action to settle an account instituted by a fiduciary (R. 4:87-1), the rule does not specifically require naming in the complaint all the persons interested in the account, which would include the bonding company. See R. 4:86-3 and compare with R. 4:86-3 and R. 4:87-1(a). See, also, 7 N.J. Practice (Clapp, Wills and Administration) (3d ed. 1962), § 1449 at 156, § 1459 at 173-174. However, the better practice and perhaps the more prudent practice would be that all parties in interest, including any surety, receive notice of the action.[1]
In the action to compel an accounting various orders were issued requiring Feldman to furnish a list of the trust assets. He did not comply with any of these orders and ultimately on July 23, 1980 he was ordered to either obtain a certified public accountant's statement of his net worth or obtain bonding for at least $150,000. The trust assets had apparently increased. *249 Feldman was already covered by a $100,000 bond issued by Indemnity.[2] That bond is not in issue.

I
On August 6, 1980 Indemnity issued a second bond for $50,000 based on a telephone call from Feldman's attorney, and an application form dated August 4 which was signed by Feldman. Feldman indicated therein that he had total assets of $1,100,000. A question on the form inquiring of any pending litigation had been left blank. In addition, the application indicated that the trust funds were invested in $44,000 in loan participations and $135,000 in a lease. Notwithstanding the incomplete application and what might be questionable investment items (the loan participations and lease) appearing on the face of the affidavit, Indemnity made no further inquiry and Feldman's attorney did not advise of the impending law suit.
The bond was signed by Feldman as principal and Indemnity as surety. Although the $50,000 bond contained Indemnity's standard form provisions and stated that Indemnity submitted itself to the jurisdiction of the court, and that its liability could "be enforced on motion without the necessity of an independent action," the bond did not contain an express statement waiving the right to a jury trial (if indeed any such right existed), as required by R. 1:13-3(b). The surrogate's office refused to accept the new bond in the belief that it did not conform to the rule. The bond was then returned on August 13, 1980 by Feldman's attorney to Indemnity with the request that it be amended to comply with the court rules.[3]
In the meantime Strauch made additional applications to the court to have Feldman removed because of noncompliance with *250 prior orders of the court. On August 19, 1980 Strauch's attorney was ordered by the court to send Indemnity copies of the pleadings. This was Strauch's first communication with Indemnity.
On August 22, 1980, after it had received copies of the suit papers, Indemnity wrote Feldman's attorney indicating that it would not extend the bond, adding that "[u]nder the circumstances we would never have issued an addition to this bond. We feel that you were more than remiss in not advising us of the true situation."
Fraud by a principal is not a defense in an action on the surety bond by a beneficiary. The general rule was summarized in Annotation, "Misrepresentations by principal obligor to surety or guarantor as affecting obligee," 71 A.L.R. 1278 (1931):
As a general rule, in the United States, when a principal obligor has induced his surety or guarantor to sign an instrument by false or fraudulent representations, such misrepresentations may not be set up by the surety or guarantor as a defense to an action on the indorsement or guaranty unless the obligee or guarantee had notice of, or participated in, such fraud.
Indemnity relies on the rule that where, however, "an obligee ... participates in, or has knowledge of, the false representations of the principal or obligor, the surety or guarantor may use such representations as a defense to an action by the obligee...." Annotation, supra, 71 A.L.R. at 1285. See, also, Restatement, Security, § 119 at 317-318 (1941).
Indemnity submits that if Strauch knew or should have known or even suspected that Feldman was approaching Indemnity for increased coverage, she was under a duty to warn Indemnity, the surety, before it issued the bond. In support of its argument Indemnity relies on the Restatement, Security, §§ 119 and 124(1) (1941), and First Nat'l Bank & Trust Co. of Racine v. Notte, 97 Wis.2d 207, 293 N.W.2d 530 (Sup.Ct. 1980).
The trial judge rejected that broad proposition, and we do here as well. Certainly, mere suspicion would not be enough. Indeed, we are satisfied that although there was concern as to *251 payments by the beneficiary, the mere institution of an action to compel an accounting, and even tardy payments in interest income to the beneficiary, are not enough to impose a duty upon the beneficiary to notify the surety company. There had been no claim made against the surety company at that point, and it was not yet determined that one would be necessary. The beneficiary only knew that an application was being made for an increased bond as an alternative to the trustee showing financial worth to the court in excess of $150,000. Strauch could not even have known for sure that Feldman would get the additional bonding through Indemnity and there was no necessity under the court order for Feldman to achieve the ordered increase through Indemnity.
On the other hand, even in the absence of a response in the application respecting pending litigation, Indemnity did nothing to check on the status of any litigation or the trust assets. The application form submitted by Feldman did indicate that he had personal assets in excess of $1,000,000 but it also indicated questionable trust investments.
Indemnity asserts that it has a right to jury trial because the bond was never filed with the jury trial waiver provision. That position is untenable because the form of the bond indicated that Indemnity submitted to enforcement upon motion. The usual manner of enforcing a bond would be a summary proceeding on motion. See R. 4:67-4(b). Presumably the only question on such motion would be whether there was an obligation on the obligee which would give rise to a duty. Duty is a question of law and here there was insufficient showing or proffer as a matter of law to impose a duty on the beneficiary.

II
Next Indemnity argues that the Essex County Surrogate's refusal to accept and file its bond as submitted voids its obligation thereon.
R. 1:13-3 reads:

*252 (a) Approval by the Court. Neither the clerk of the court, the sheriff or any other person shall accept a surety bond in any action or proceeding pending in the court, other than a bond for costs given by a non-resident claimant, unless the same has been approved as to form and sufficiency by a judge of any court of this State except that a surrogate may accept a bond approved by himself, and in the absence of a judge the clerk may accept a bail bond approved by himself. Bonds need not be filed in duplicate.
(b) Contents. All surety and bail bonds given in any court shall provide that the principal and surety thereby submit themselves to the jurisdiction of the court (or to the jurisdiction of the trial court, if the bond is given in an appellate court); that they irrevocably appoint the clerk of the court having jurisdiction as their agent upon whom papers affecting their liability on the bond may be served; that they waive any right to a jury trial; that the liability of the principal and surety may be enforced by motion in the action, if one is pending, without the necessity of an independent action; and that the motion may be served on the principal and surety by mailing it, by ordinary mail, to the clerk of the court, or to the surrogate in the case of a bond approved by the county court, probate division or the surrogate, who shall forthwith mail copies thereof by ordinary mail to the principal and surety at the addresses stated in the bond.
(c) Cash Deposit. Whenever a bond with sureties is required, the court in lieu thereof may by order allow a cash deposit in such sum as it fixes.
Indemnity cites no authority for that proposition except to argue on the basis of the failure to meet the requirement of R. 1:13-3 and its reliance on contract law. It argues that somehow the surrogate is the purported agent of the obligee. There is no merit in that argument. The surrogate is a quasi-judicial officer who performs certain ministerial functions in this regard and assures compliance with the court rules. See In re Conda, 72 N.J. 229, 233-234 (1977). The surrogate does not have the authority or power to declare a bond void. The surrogate is not the agent of any party, except perhaps in the sense that he may be designated as a person to receive service of process on a fiduciary.
The trial judge concluded that the language of the bond itself, which expressly provided that it could "be enforced by motion," was an effective waiver of the jury trial (cf., R. 4:67-4(b)) and that the bond sufficiently conformed to the rule. On the other hand, Indemnity asserts that both delivery and acceptance of the bond are essential to its validity, and the nonacceptance by the surrogate made the bond invalid. The argument is that the *253 surrogate's refusal to file the bond prevented a contract from coming into existence, and that the surrogate's actions constituted only a rejection and counteroffer. We find that argument totally inapposite. There was no contract between the bonding company and the surrogate. The contract was between the bonding company and Feldman, the principal on the bond. In State v. Gonzalez, 69 N.J. Super. 283, 287 (App.Div. 1961), we held that the requirement of the rule that a bail bond be approved by the judge is "at most directory" and "cannot vitiate the obligations of principal and surety who unconditionally bound themselves by their signatures before the recognizance was submitted for approval." In Gonzalez the magistrate had failed to endorse his approval on the bail bond. Id. at 284. The insurance company unsuccessfully argued that failure of the magistrate to so approve the bond nullified the bonding company's obligation thereon. Id. at 285. Here it may be argued that the refusal of the surrogate to accept the bond for filing was erroneous because the bond sufficiently fulfilled the requirements of the rule. But the approval provisions are in any event only directory. The contract between principal and surety was effective and enforceable by the beneficiary.
Affirmed.
NOTES
[1] Perhaps such a requirement should be considered by the Supreme Court's Civil Practice Committee.
[2] A corporate name change occurred between the time of issuance of the two surety bonds but that fact is irrelevant to the issues before us.
[3] The original bond likewise did not contain the express waiver of jury provision. Indemnity made payment on that bond.