288 N.J. Super. 223 (1996)
672 A.2d 213
MARY PERRY, ALTERNATE EXECUTRIX OF THE ESTATE OF MADELYN R. ANGUS, ON BEHALF OF THE ESTATE OF MADELYN R. ANGUS, PLAINTIFF-APPELLANT,
v.
VINCENT P. TUZZIO, JR., ENZO LA VECCHIA, LA VECCHIA AND ZARRO, AND JOHN DOES A-Z, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 14, 1996.
Decided March 7, 1996.
*225 Before Judges PRESSLER, KEEFE and WEFING.
Robert Ricci Jr. argued the cause for appellant (Salerno, Cozzarelli, Mautone, DeSalvo & Nussbaum, attorneys; Frank J. Cozzarelli, of counsel; Mr. Ricci, on the brief).
Sam Rosenberg argued the cause for respondents Enzo La Vecchia and La Vecchia and Zarro (Reiseman & Sharp, attorneys; Mr. Rosenberg, of counsel and on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
*226 Plaintiff Mary Perry, the alternate executrix of the estate of Madelyn R. Angus, appeals from an order of the Law Division dismissing, on entire controversy grounds, her professional negligence action against defendant La Vecchia and Zarro, the accountant partnership that had employed defendant Vincent P. Tuzzio, plaintiff's predecessor executor, and defendant Enzo La Vecchia, one of the partners. We are persuaded that the entire controversy doctrine, whose application here rested upon an earlier probate action, cannot reasonably be invoked under the circumstances of this case to bar the Law Division action. Accordingly, we reverse and remand.
This litigation is attended by an anomalous and tortuous procedural background. Defendant Tuzzio, an accountant employed by defendant La Vecchia and Zarro, was decedent's business advisor in whom she evidently placed considerable confidence. She had, in fact, given him a limited power of attorney during her lifetime, authorizing him to withdraw funds from her bank accounts. Decedent also named him as executor of her will, left him a bequest of $40,000, and devised the residuary estate in equal shares to a charity and to plaintiff, whom she named as alternate executor. Decedent, then elderly, died in 1988, about a year after she executed her will. Tuzzio qualified as executor, and letters testamentary were issued to him.
During the course of the administration of the estate, plaintiff learned that Tuzzio had used decedent's funds during her lifetime to make for her an imprudent unsecured loan of $80,000 to clients of his firm to enable them to purchase a home. He also negotiated a consideration for himself to be paid by the borrowers for his having obtained the loan for them. Accordingly, in July 1990, plaintiff, by complaint and order to show cause filed in the probate action, sought Tuzzio's removal as executor because, among other reasons, the estate apparently had a claim against him arising out of that transaction. Tuzzio filed an answer denying wrongdoing. Eventually, however, he agreed to endorse a consent order substituting *227 plaintiff as executrix, requiring him to turn over the estate's assets to her, and requiring him to settle his account.
In September 1991, Tuzzio filed his complaint to settle his account pursuant to R. 4:87. The loan was listed as an asset of the estate at its face value, although by that time the borrowers had long since defaulted, the purchase money mortgage on the house had been foreclosed, and the borrowers had applied for bankruptcy protection. Plaintiff filed exceptions to the account seeking to surcharge Tuzzio for the loss of the principal of the loan, to deny him executor commissions for the period of his service, to recoup, by way of surcharge, the accounting fees previously paid to him and his firm and to require him to repay to the estate the amount of his bequest.
An evidential hearing ensued. All the issues raised by the exceptions were there addressed, even though Tuzzio's conduct as executor was intertwined with his actions as decedent's financial advisor during her lifetime. The court rejected Tuzzio's contention that the claims based on his pre-executorship conduct should not be tried as part of the exception proceeding as a matter of procedural due process, the proper allocation of judicial business, and the orderly trial of causes of action. Following the evidential hearing, the court entered an order surcharging Tuzzio for the loss sustained by the estate as a result of the loan and disallowing executor and accountant fees. He was not required to disgorge his bequest.
Tuzzio appealed, and by our opinion under docket number A-1671-92T1, we affirmed. We were satisfied that the evidence supported the trial judge's findings and conclusions. With respect to Tuzzio's procedural challenges, we recognized the procedural anomaly in trying Tuzzio's pre-executorship conduct as part of the exception proceeding. We concluded, however, that there was no resultant injustice to him because of his full and fair opportunity to litigate the issue and because of the nexus between that conduct and his conduct as executor. That is to say, the exception essentially challenged the inclusion of the face amount of the loan *228 as an asset of the estate. We agreed with the trial judge that litigation of that challenge fairly required consideration of all the facts respecting Tuzzio's involvement with that listed asset.
While Tuzzio's appeal was pending, plaintiff brought this professional negligence action against the defendant partnership that had employed Tuzzio during the time of these events. Basically, she sought recovery against them on respondeat superior and negligent supervision theories, Tuzzio having apparently himself become judgment proof. Defendant moved for summary judgment dismissing the complaint on the ground of the entire controversy doctrine, and plaintiff cross moved for summary judgment of liability based on the doctrine of collateral estoppel. The court granted defendant's motion and denied plaintiff's. Plaintiff appeals.
We have no doubt that the court was correct in rejecting plaintiff's collateral estoppel claim. We are also satisfied, however, that it erred in dismissing her action on entire controversy grounds. In sum, we conclude that plaintiff has the right to litigate her claims against defendants, and that defendants have the right to defend against them unburdened by any fact or issue preclusion.
We appreciate the far reach accorded the entire controversy doctrine by Cogdell v. Hospital Center at Orange, 116 N.J. 7, 560 A.2d 1169 (1989), and its more recent progeny, namely, Mortgagelinq Corp. v. Commonwealth Land Title, 142 N.J. 336, 662 A.2d 536 (1995); Mystic Isle Development Corp. v. Perskie & Nehmad, 142 N.J. 310, 662 A.2d 523 (1995); Circle Chevrolet v. Giordano, Halleran & Ciesla, 142 N.J. 280, 662 A.2d 509 (1995); and DiTrolio v. Antiles, 142 N.J. 253, 662 A.2d 494 (1995). We recognize that the doctrine places upon parties the obligation to join in a single litigation not only all of the separate components of their controversy but also all other parties against whom claims germane to that controversy might be brought. We also recognize that the penalty for failure to so join either issues or parties is the preclusion of subsequent litigation against those parties and *229 the raising of those claims. We therefore have no doubt that if the original litigation here had been an action at law against Tuzzio based on his negligence, fraud, or professional malpractice, plaintiff's failure to have joined Tuzzio's employers in that action would certainly have precluded this suit.
Our difficulty here lies in the fact that the original action was not a plenary action at law but rather a piece of a probate action  a hearing on exceptions to an executor's account. The question is whether an exceptant to an accounting is obliged in that summary proceeding to join all persons, uninvolved as they may be in the probate proceeding, who have any transactional relationship to the subject of the exception  irrespective of the nature of that relationship, irrespective of a right to jury trial and full discovery which any such person might have, and irrespective of the burden such a requirement may impose on the orderly procedure for the administration of decedent's estate.
We doubt that the entire controversy doctrine was ever intended to go this far since its application in that situation is so basically inconsistent with the limited nature of an accounting proceeding. As we understand accounting proceedings, participation is limited to parties in interest in the estate  beneficiaries, heirs, legal representatives, fiduciaries, sureties, and creditors. In re Polevski Estate, 186 N.J. Super. 246, 248, 452 A.2d 469 (Ch. Div. 1982). And see R. 4:87-2(a), 4:87-4(a). An exception to an executor's account is not a vehicle for adjudication of claims that an estate may have against third persons but rather a vehicle for determining the propriety of the executor's statement of assets and claims for allowance. Consequently, it is only the conduct of the executor, not the conduct of others, that is properly before the court. See, generally, 7 Alfred C. Clapp & Dorothy G. Black, New Jersey Practice, Wills and Administration § 1465 (Rev. 3rd ed. 1984).
The broadening of the exception proceeding here to include Tuzzio's pre-executorship conduct was, therefore, procedurally anomalous. We justified that departure from customary practice *230 because of the unusual circumstances then before us, namely, the happenstance of the executor being virtually compelled to justify his pre-executorship conduct in defense of his executor's accountings. Consequently, there was an inevitable blurring of his disparate status at different points of the overall transaction. That is to say, we clearly regarded the broadening of the exception hearing as extraordinary but warranted. To broaden it further now by not only permitting, but requiring, related claims against others to be joined would be, in our view, an unwarranted geometric leap into confusion, obfuscation, delay, and perversion of the accounting action.
The entire controversy doctrine is an equitable principle, predicated upon "judicial fairness and will be invoked in that spirit." Crispin v. Volkswagenwerk, A.G., 96 N.J. 336, 343, 476 A.2d 250 (1984), quoted with approval by Cogdell, supra, 116 N.J. at 27, 560 A.2d 1169. We think it plain that its invocation here would be inequitable. First, application of the doctrine requires equality of forum, that is, the first forum must have been able to provide all parties with the same full and fair opportunity to litigate the issues and with the same remedial opportunities as the second forum. Thornton v. Potamkin Chevrolet, 94 N.J. 1, 5, 462 A.2d 133 (1983); Cafferata v. Peyser, 251 N.J. Super. 256, 261, 597 A.2d 1101 (App.Div. 1991). The limited nature of the accounting procedure in general and the hearing on exceptions in particular readily indicates that that was neither the forum nor the procedure for litigating a professional malpractice claim against persons not in interest in the estate.
Moreover, there is nothing at all to suggest that an exceptant would have been put on notice, even by the developing body of case law, that persons not in interest in the estate who had a liability to the estate related to the subject of the exception would have to be joined in order for the claim to be preserved. That simply is not consistent with the general understanding of the bar regarding the nature of probate proceedings. We recognize that R. 4:30A, the entire controversy rule, excepts summary actions in *231 which leave of court must be obtained to file a counterclaim or cross claim. R. 4:67-4(a). Although plaintiff could, therefore, have sought leave to file a counterclaim or cross claim, those pleadings are appropriate only for the raising of additional issues among those who are already parties. They are not mechanisms for joining new parties. New parties must be joined either by a third-party complaint under R. 4:8-1 or an amendment of the complaint under R. 4:9-1. An impleader under R. 4:8-1 was inappropriate since no affirmative claim was made against plaintiff. See Family Sav. Bank v. DeVincentis, 284 N.J. Super. 503, 510, 665 A.2d 1119 (App.Div. 1995). An amendment of the complaint was also inapposite because plaintiff had not filed a complaint in that proceeding  she was an exceptant under R. 4:87-8. There was thus no readily apparent procedural mechanism at all. Nevertheless, had plaintiff had sufficient foresight to seek the extraordinary relief of joining these defendants in the exception hearing, we have no doubt that the court's proper response would have been either a denial of the application, or a reservation of the claim for future litigation, or a grant of the application subject to severance for later separate trial. See Brown v. Brown, 208 N.J. Super. 372, 506 A.2d 29 (App.Div. 1986). Consequently, we are satisfied that application of the entire controversy doctrine in these circumstances to preclude this action would constitute a trap for the unwary rather than a shield for the judicial system and its litigants against the unfair burden of multiple related separate actions. In sum, we see no basis in the doctrine itself or in its underlying purposes and premises dictating the loss of plaintiff's cause of action against these defendants.
We also think it plain that the defendants here cannot be excluded by collateral estoppel considerations from litigating all factual issues relating to their alleged liability to the estate based on Tuzzio's pre-executorship conduct. Collateral estoppel is a preclusive doctrine that bars litigation of facts fully litigated and actually determined in a prior action involving a different claim or cause of action. Application of the doctrine ordinarily requires *232 that the parties in the two actions are the same or are in privity. Although we recognize that mutuality of estoppel is not an absolute prerequisite, the doctrine will not be applied to a non-party where the economy of resorting to the doctrine is substantially outweighed by considerations of fairness, particularly where the doctrine is invoked offensively rather than defensively. State v. Gonzalez, 75 N.J. 181, 186, 380 A.2d 1128 (1977); Busch v. Biggs, 264 N.J. Super. 385, 400, 624 A.2d 1017 (App.Div. 1993); Kortenhaus v. Eli Lilly & Co., 228 N.J. Super. 162, 165, 549 A.2d 437 (App.Div. 1988); Allesandra v. Gross, 187 N.J. Super. 96, 103-105, 453 A.2d 904 (App.Div. 1982). The inequity here of barring factual relitigation by persons who were not parties in the original proceeding is plain. See McFadden v. Turner, 159 N.J. Super. 360, 365, 388 A.2d 244 (App.Div. 1978) (making clear that a second action against persons vicariously liable for the previously-adjudicated negligence of an employee requires full relitigation of the factual issues).
Finally, we reject defendant's argument that the complaint should be dismissed because of plaintiff's violation of R. 4:5-1(b)(2), which requires a party's first pleading to include a certification as to whether the matter in controversy is the subject of any other action pending in any court. It is true that plaintiff's complaint did not certify to the pendency of Tuzzio's appeal in this court. Nevertheless, we note that no party was in any way prejudiced by this omission and, in the circumstances, we are satisfied that plaintiff's omission was technical rather than substantive. In the circumstances here, it is not grounds for dismissal. Cf. DiTrolio v. Antiles, supra, 142 N.J. at 276-277, 662 A.2d 494.
The determination of the trial court denying plaintiff's motion for application of collateral estoppel is affirmed. The order granting defendants' motion for summary judgment dismissing the complaint is reversed and the matter remanded for further proceedings consistent with this opinion.