**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0880-16T3

EVANGELOS DIMITRAKOPOULOS and
MATILDE DIMITRAKOPOULOS,

      Plaintiffs-Appellants,

v.

BORRUS, GOLDIN, FOLEY, VIGNUOLO,
HYMAN AND STAHL, P.C.,
STEVEN L. FOX, ESQ. and
ANTHONY B. VIGNUOLO, ESQ.,

      Defendants-Respondents,

and

FRAZER EVANGELISTA & COMPANY, LLC,
and RALPH J. EVANGELISTA,

      Defendants.

_____

Argued October 3, 2017 — Decided October 19, 2017

Before Judges Yannotti and Carroll.

On appeal from the Superior Court of New
Jersey, Law Division, Middlesex County, Docket
No. L-5373-15.

Jae H. Cho argued the cause for appellants
(Cho Legal Group, LLC, attorneys; Mr. Cho, on
the briefs).

James E. Stahl argued the cause for respondent (Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, PC, attorneys; Mr. Stahl, on the brief).

PER CURIAM

Plaintiffs appeal from a November 20, 2015 order that dismissed their legal malpractice action against defendants Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C. (BGF), Steven L. Fox, and Anthony B. Vignuolo, pursuant to Rule 4:6-2(e). The trial court found the malpractice action was barred by the entire controversy doctrine. For the reasons that follow, we affirm.

I.

We provide a detailed procedural history in order to place this appeal in proper perspective. In October 2009, plaintiffs retained BGF to represent them in litigation against a former business partner who had allegedly improperly diverted funds from the company (the underlying action). Plaintiff Matilde Dimitrakopoulos was a fifty-one percent owner in the company, Integrated Construction and Utilities, LLC (ICU). Matilde's husband, plaintiff Evangelos Dimitrakopoulos, had no ownership interest in ICU. However, he acted as Matilde's agent, performing all ownership duties on her behalf, including executing the retainer agreement with BGF.

The underlying action proceeded in the Superior Court, Chancery Division, Middlesex County until December 17, 2010, when it was agreed that the business dispute would be submitted to binding arbitration, and BGF was permitted to withdraw as counsel. The record reflects that Evangelos was present in court and, when questioned by the Chancery judge, responded that he heard and accepted that disposition. The underlying action then proceeded in arbitration until September 2, 2011, when, according to plaintiffs, they retained new counsel and settled the ICU business dispute on the final day of arbitration.

In the interim, on March 7, 2011, BGF filed an action in the Law Division to collect its unpaid legal fees for services rendered on behalf of plaintiffs in the underlying action (the collection action). On April 14, 2011, Evangelos filed a pro se answer denying he "promised to pay for services which were unnecessary and contrary to [his] direction." On September 2, 2011, the court suppressed the answer without prejudice for failure to answer interrogatories.

On January 6, 2012, the court denied BGF's motion to suppress the answer with prejudice. On February 21, 2012, the court denied BGF's motion for reconsideration, and extended the time to provide more specific answers to BGF's interrogatories until March 2, 2012. Because Evangelos still had not provided the required

discovery, the court granted BGF's motion for final judgment of default on July 13, 2012. BGF then undertook efforts to collect the $121,947.99 judgment.

Three years later, on September 10, 2015, plaintiffs filed the legal malpractice action under review against BGF, Fox, and Vignuolo.[1] Plaintiffs alleged that defendants committed malpractice in the underlying action by: failing to properly plead Matilde's claims and obtain her consent before agreeing to binding arbitration; failing to properly perform discovery and secure expert rebuttal reports; and improperly billing them excessive amounts.

Defendants promptly moved to dismiss plaintiffs' complaint pursuant to Rule 4:6-2(e), arguing it was barred by both the entire controversy doctrine and the doctrine of waiver. Specifically, defendants asserted that plaintiffs should have raised their malpractice claims as a defense or counterclaim in the collection action.

The court conducted oral argument on the motion on November 20, 2015. Notably, the following colloquy ensued:

> THE COURT: So all [plaintiffs'] damages [were] ascertained as of September 6[], 2011, correct?

---

[1] The complaint also asserted accounting malpractice claims against other parties that have since been resolved and are not at issue in this appeal.

PLAINTIFFS' COUNSEL: Yes.

In an oral decision, Judge Arthur Bergman granted defendants' motion to dismiss, finding the malpractice action was barred by the entire controversy doctrine. The judge agreed with plaintiffs' contention that the doctrine did not obligate them to raise their malpractice claims in the underlying action. However, the judge found that:

> [O]nce that underlying case is done, [plaintiffs have] the obligation to raise [those claims] in the subsequent [collection] case and they had ample opportunity to do so.
>
> And I'm not going to tell you that during the [four] months or [six] months prior to that, there's an issue and if the default had been granted and the case had been defaulted against them within those first [six] months, I would agree with you [that the entire controversy doctrine would not apply].
>
> But . . . once [plaintiffs] understood what the damages were, they had counsel and that [collection] case was still ongoing until it was ultimately [resolved ten] months later. That is an opportunity they chose not to have.

Accordingly, the judge concluded that the entire controversy doctrine does not require malpractice claims to be brought during the pendency of an underlying action "in which the malpractice arose and a reasonable time thereafter." However, the judge determined that "[ten] months is more than a reasonable time thereafter." The judge found this ten-month period, during which

5

BGF's collection action remained pending after the underlying action concluded, afforded plaintiffs adequate opportunity to assert their malpractice claims in the collection action. Consequently, their failure to do so barred their subsequent malpractice action. The judge entered an order dismissing the complaint with prejudice. This appeal followed.

## II.

On appeal, plaintiffs argue: (1) the entire controversy doctrine does not apply to legal malpractice claims; (2) the motion judge abused his discretionary authority; (3) our standard of review is de novo; (4) the waiver doctrine does not require dismissal of the complaint; (5) defendants' motion to dismiss should have been denied as premature; and (6) the motion judge improperly relied on facts outside the record.[2] We do not find these arguments persuasive.

## A.

We apply a de novo standard of review to a trial court's order dismissing a complaint under Rule 4:6-2(e). See Stop & Shop

---

[2] Defendants filed a motion to strike points (2) through (5) of plaintiffs' brief because they were not raised below. On March 27, 2017, the panel denied the motion without prejudice, subject to our further consideration. We now deny the motion because we have considered the challenged arguments raised by plaintiffs and find they lack sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Supermarket Co. v. Cty. of Bergen, 450 N.J. Super. 286, 290 (App. Div. 2017) (quoting Teamsters Local 7 v. State, 434 N.J. Super. 393, 413, 416 (App. Div. 2014)). Under the rule, we owe no deference to the motion judge's conclusions. Rezem Family Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 114 (App. Div.), certif. denied, 208 N.J. 368 (2011). "[O]ur inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (citing Reider v. Dep't of Transp., 221 N.J. Super. 547, 553 (App. Div. 1987)). "A pleading should be dismissed if it states no basis for relief and discovery would not provide one." Rezem Family Assocs., LP, supra, 423 N.J. Super. at 113 (citing Camden Cty. Energy Recovery Assoc., L.P. v. N.J. Dep't of Envtl. Prot., 320 N.J. Super. 59, 64 (App. Div. 1999), aff'd, 170 N.J. 246 (2001)).

### B.

The entire controversy doctrine "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." Wadeer v. N.J. Mfrs. Ins. Co., 220 N.J. 591, 605 (2015) (quoting Highland Lakes Country Club & Cmty. Ass'n v.

Nicastro, 201 N.J. 123, 125 (2009)).  The purposes of the doctrine are "'(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay.'" Wadeer, supra, 220 N.J. at 605 (quoting DiTrolio v. Antiles, 142 N.J. 253, 267 (1995)).

Consistent with the doctrine's objectives, Rule 4:30A provides that "[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine[.]"  The rule "encompasses 'virtually all causes, claims, and defenses relating to a controversy[,]'" Oliver v. Ambrose, 152 N.J. 383, 394 (1998) (quoting Cogdell v. Hosp. Ctr. at Orange, 116 N.J. 7, 16 (1989)), and requires all parties in an action to raise all transactionally related claims or risk preclusion.  K-Land Corp. No. 28 v. Landis Sewerage Auth., 173 N.J. 59, 69-71 (2002); R. 4:30A.

"In determining whether a subsequent claim should be barred under [the entire controversy] doctrine, 'the central consideration is whether the claims against the different parties arise from related facts or the same transaction or series of transactions.'"  Wadeer, supra, 220 N.J. at 605 (quoting DiTrolio,

supra, 142 N.J. at 268).  "It is the core set of facts that provides the link between distinct claims against the same parties . . . and triggers the requirement that they be determined in one proceeding."  Wadeer, supra, 220 N.J. at 605 (quoting DiTrolio, supra, 142 N.J. at 267-68).

However, the entire controversy doctrine does not "apply to bar component claims either unknown, unarisen or unaccrued at the time of the original action."  K-Land, supra, 173 N.J. at 70 (quoting Pressler, Current N.J. Court Rules, comment 2 on R. 4:30A (2002)).  Also pertinent here is our Supreme Court's dictate that "the entire controversy doctrine no longer compels the assertion of a legal-malpractice claim in an underlying action that gives rise to a claim."  Olds v. Donnelly, 150 N.J. 424, 443 (1997) (emphasis added).

Additionally, when "considering fairness to the party whose claim is sought to be barred, a court must consider whether the claimant has had a fair and reasonable opportunity to have fully litigated that claim in the original action."  Gelber v. Zito P'ship, 147 N.J. 561, 565 (1997) (internal quotation marks and citations omitted).  Thus, "application of the entire controversy doctrine requires some degree of equality of forum; that is, the first forum must have been able to provide all parties with the same full and fair opportunity to litigate the issues and with the

A-0880-16T3

same remedial opportunities in the second forum."  Hernandez v. Region Nine Hous. Corp., 146 N.J. 645, 661 (1996) (quoting Perry v. Tuzzio, 288 N.J. Super. 223, 230 (App. Div. 1996)).

As noted, legal malpractice claims are exempt from the preclusive effect of the entire controversy doctrine to the extent they need not be asserted "in the underlying action that gives rise to the claim." Olds, supra, 150 N.J. at 443. Central to our analysis, then, is the interpretation of the phrase "underlying action that gives rise to the [malpractice] claim." Plaintiffs argue that the collection action constitutes the "underlying action," and hence they were not required to assert their malpractice claims in that action. However, plaintiffs erroneously conflate the collection action with the underlying ICU business dispute, which in this case is the underlying action that gives rise to plaintiffs' malpractice claims.

This determination, however, does not conclude our analysis. Rather, we must assess whether plaintiffs had a fair and reasonable opportunity to fully litigate their malpractice claims in the prior collection action. Also, because the entire controversy doctrine is equitable in nature, we must consider whether its application "would be unfair in the totality of the circumstances and would not promote any of its objectives, namely, the promotion of conclusive determinations, party fairness, and judicial economy

10

and efficiency." K-Land Corp., supra, 173 N.J. at 70 (quoting Pressler, Current N.J. Court Rules, comments 1 & 2 on R. 4:30A (2002)).

It is true, as plaintiffs point out, that the underlying ICU action had not yet concluded when BGF first filed the collection action. They also argue, without any competent factual support in the record, that they were not aware they had malpractice claims against defendants until sometime later, when they consulted an attorney.

It is undisputed, however, that the underlying action concluded with a settlement on September 2, 2011. At that point, plaintiffs concededly had ascertained the full extent of their purported damages. Further, with respect to plaintiffs' knowledge that their damages were attributable to defendants' alleged professional negligence, the critical inquiry is "whether the facts presented would alert a reasonable person, exercising ordinary diligence, that he or she was injured due to the fault of another." Caravaggio v. D'Agostini, 166 N.J. 237, 246 (2001). Contrary to plaintiffs' argument, awareness of the "legal effect of those facts" is not a requirement for accrual of the cause of action. Grunwald v. Bronkesh, 131 N.J. 483, 493 (1993) (citing Burd v. N.J. Tel. Co., 76 N.J. 284, 291-92 (1978)).

As Judge Bergman correctly pointed out, at the time the underlying action concluded, or within a reasonable time thereafter, plaintiffs knew, or should have known, that their alleged damages were attributable to defendants' professional negligence. They then had a ten-month period before judgment was entered to file amended pleadings in the collection action asserting malpractice as a counterclaim or defense. Instead, plaintiffs delayed three more years before filing their malpractice complaint. Our consideration of the facts and equitable factors leads us to conclude that the motion judge correctly determined that the entire controversy doctrine applied here and barred plaintiffs' malpractice complaint.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0880-16T3