**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3675-22

IN THE MATTER OF THE
TRUST UNDER ARTICLE
THIRD OF THE LAST WILL
AND TESTAMENT OF
WU HUAI WEN, DATED
NOVEMBER 6, 2009.

_____

Argued May 14, 2024 – Decided July 8, 2024

Before Judges Gooden Brown and Haas.

On appeal from the Superior Court of New Jersey, Chancery Division, Morris County, Docket No. P-002516-09.

Robert Mahoney argued the cause for appellant Peter Wen (Norris McLaughlin, PA, attorneys; Robert Mahoney and W. Joseph Salvador, on the briefs).

Stephen C. Gilbert argued the cause for respondent Ping Wen (The Gilbert Law Group, PC, attorneys; Stephen C. Gilbert, on the brief).

Meredith L. Grocott argued the cause for respondent Shirley B. Whitenack, Esq., Temporary Substituted Trustee (Schenck, Price, Smith & King, LLP, attorneys; Meredith L. Grocott, of counsel and on the brief).

PER CURIAM

In this probate matter, Peter Wen, son of the decedent, Wu Huai Wen, appeals from the first paragraph of the June 19, 2023, Chancery Division order approving the first interim accounting of the trust established under his father's Last Will and Testament (LWT) for the period August 1, 2014, through December 31, 2022. After reviewing the record in light of the applicable legal standards, we conclude appellant's arguments are uniformly without merit, and we affirm substantially for the reasons stated in Judge Frank J. DeAngelis's cogent written opinion. R. 2:11-3(e)(1)(E).

In his written statement of reasons, Judge DeAngelis provided the following background:

> Wu Huai Wen (hereinafter "[d]ecedent") died testate on November 14, 2009. Pursuant to Article Third of [d]ecedent's [LWT] dated November 6, 2009, a Family Trust was established providing for income payments and discretionary principal payments to [d]ecedent's spouse, Ping Wen . . . during her lifetime. Following Ping's[1] death, the remaining balance [was] to be distributed to [d]ecedent's living descendants, including his daughter Catherine Wen . . . , his son Andrew Wen . . . [,] and his son Peter Wen . . . . Ping and the [c]hildren were named as Trustees of the Trust; however, following litigation, [Shirley Whitenack, Esq.] was appointed by the [c]ourt as Temporary

---

[1] Because of the common surname, we use first names to avoid confusion and intend no disrespect.

Substitute Trustee by [o]rder dated June 30, 2014. [Whitenack] now seeks to have her interim accounting . . . approved.

Under Article Third of the LWT, the Family Trust was to be administered as follows:

> (1) Until the death of [Ping], the trustees shall pay to [Ping] all the net income in quarter-annual or more frequent installments.
>
> (2) In addition, the trustees may distribute from time to time to [Ping] such amounts of principal (even to the point of completely exhausting the same) as the trustees, in their discretion, deem advisable for the health, support, and maintenance of [Ping] in [Ping's] accustomed manner of living.

According to Judge DeAngelis,

> Pursuant to the [a]ccounting, the Trust's principal assets amounted to $1,480,090.33, of which principal disbursements of $188,199.68 and principal distributions of $298,104.57 were made, leaving a principal balance of $993,786.08. The Estate received income in the amount of $254,651.04, of which $188,004.08 was distributed. A total of $1,060,433.04 remain[ed] in the Estate.

Peter filed an answer to the accounting with several exceptions. In addition to "seeking additional supporting documentation for several accounting entries," Judge DeAngelis described Peter's submission as follows:

> Peter submitted a [c]ertification in which he detail[ed] his version of the background and grievances against

his sister Catherine's handling of the Estate and Trust assets. However, he specifically state[d] that "[t]he purpose of th[e c]ertification and the [e]xceptions/[r]equest for [r]eceipts set forth in the accompanying [a]nswer [was] not to present any specific objections to the accounting submitted by . . . Whitenack . . . but to set forth the basis for [his] concerns about [his] sister's control and manipulation of [his] mother for consideration by [Whitenack] as it relates to the ongoing administration of the Trust . . . ."

[(Fourth alteration in original).]

In response to Peter's submission, Whitenack supplied Peter with supplemental documentation despite noting that Peter's exceptions did not comport with Rule 4:87-8. In turn, Peter reiterated his exceptions and requested "more detailed information" regarding "the monthly distributions of principal" to Ping in the amount of $11,000. Peter believed the monthly distribution requests came from Catherine, rather than Ping, and accused Catherine of deceptively acquiring ownership interests in three of Ping's properties, one of which was Ping's current residence for which Catherine charged Ping rent. Peter further posited that "Catherine has inappropriately used her fiduciary role to both siphon off Ping's assets while simultaneously having the Trust fund her lifestyle."[2]

---

[2] Catherine served as Ping's attorney-in-fact.

Specifically, Peter highlighted rent payments, which were "based on a suggested rental amount provided by a realtor" but resulted in Catherine "receiving a double benefit in the form of 'rent,'" "a home health aide" who was neither necessary nor licensed and "act[ed] more as a domestic assistant," "'gifts' which directly benefit Catherine and her family," and other "miscellaneous living expenses." Although Peter acknowledged that Whitenack had denied certain requests, including funds to pay for Catherine's son's school, Peter requested Whitenack "to conduct a further investigation" into "the propriety of the expenses" as well as "other sources of income and support available to Ping."

Whitenack defended the monthly distributions as "appropriate and in line with the explicit provisions in the Trust." The judge described Whitenack's position as follows:

> [Whitenack] maintains that the bulk of the $11,000 comprised of $3,250 in rent and $6,050 in home health aide costs, and the remainder covered utilities and costs of living.[3] [Whitenack] maintains the monthly payment expressly did not and does not incorporate any monthly gifting, as suggested by Peter. [Whitenack] maintains that she had no control or involvement over how Ping expenses her personal assets. It is within [Whitenack's] authority to make distributions for a home health aide, but she has no obligation to evaluate whether a home health aide is necessary or the

---

[3] Costs of living included "food, personal needs, and expenses related to [Ping's] dog."

5

credentials. With regard to the rent, [Whitenack] had no involvement on any transfer of property and she is merely making distributions for Ping to pay monthly rent, which she would need to pay in some form (through monthly rent, mortgage, or assisted living costs) if she did not live with Catherine. With regard to Peter's suggestion that [Whitenack] must take into account Ping's other sources of income and assets, the Trust terms specifically provide [otherwise].[4]

The judge agreed that "the terms of the Trust confer[red] on [Whitenack] complete discretion in making principal distributions for Ping's health, support and maintenance without taking into consideration her other assets and forms of income." The judge reasoned:

> Rent, health aide costs, and living expenses/utilities are clearly within the parameters set forth in the Trust as appropriate expenditures. Ping's choice of living situation (with her daughter or otherwise) is not a factor [Whitenack] is required to consider in determining whether rent is an appropriate expenditure, nor is her choice of home health aide. [Whitenack] was clearly acting in her authorized discretion in making the $11,000 monthly distributions to Ping, as the primary lifetime beneficiary of the Trust. Peter is attempting to use the accounting as a mechanism to make allegations against his sister Catherine, which is not a proper use of exceptions pursuant to Rule 4:87-8. Accordingly, there is no basis to deny [Whitenack's] accounting on those grounds.

---

[4] Under Article Eighth of the LWT, "[i]n exercising the discretion conferred upon them to pay the income or principal of any trust hereunder, the trustees may, but shall not be required to, take into consideration any other resources the beneficiary may have."

The judge entered a memorializing order and this appeal followed.

On appeal, Peter argues the judge "overlook[ed]" the fact that the trustee's "well-established duty" was not only to the lifetime beneficiary but also to the "remainder beneficiaries of a trust." He contends the judge failed to adequately scrutinize "the [t]rustee's exercise of discretion" given the issues he raised in his exceptions of Catherine's "manipulation of her mother" and "dissipat[ion]" of Ping's assets. Peter also asserts that the matter should not have been summarily decided but further discovery and a plenary hearing was needed to determine the legitimacy of "the contested principal disbursements" as well as Ping's other sources of income.

"An action to settle an account on an estate trust is a formalistic proceeding, unique to probate." Higgins v. Thurber, 205 N.J. 227, 229 (2011); see R. 4:87-1 to -9. Such actions are "commenced by the filing of a complaint in the Superior Court, Chancery Division, and upon issuance of an order to show cause pursuant to [Rule] 4:83." R. 4:87-1(a); see also R. 4:87-3 (governing the form and contents of the accounting).

Rule 4:87-8 allows an interested person to file written exceptions to an accounting, providing:

In all actions for the settlement of accounts, other than plenary actions, any interested person may, at least [five] days before the return of the order to show cause or within such time as the court allows, serve the accountant with written exceptions, signed by that person or his or her attorney, to any item in or omission from the account, including any exceptions to the commissions or attorney's fees requested. The exceptions shall state particularly the item or omission excepted to, the modification sought in the account and the reasons for the modification. An exception may be stricken because of its insufficiency in law.

"[T]he accounting procedure in general and the hearing on exceptions in particular" are "limited" in nature. Perry v. Tuzzio, 288 N.J. Super. 223, 230 (App. Div. 1996). The action proceeds as a summary matter, R. 4:83-1, conducted in accordance with Rule 4:67-5. See N.J.S.A. 3B:2-4 (allowing actions by fiduciaries to proceed in a summary manner); see also Garruto v. Cannici, 397 N.J. Super. 231, 241-42 (App. Div. 2007) (providing an overview of probate proceedings in New Jersey). "[A] court must make findings of facts, either by adopting the uncontested facts in the pleadings after concluding that there are no genuine issues of fact in dispute, or by conducting an evidentiary hearing." Courier News v. Hunterdon Cnty. Prosecutor's Off., 358 N.J. Super. 373, 378-79 (App. Div. 2003); see also Pressler & Verniero, Current N.J. Court Rules, cmt. on R. 4:87-8 (2024). If there are genuine issues as to any material fact, the court should conduct an evidentiary hearing on those disputed issues.

8

Tractenberg v. Twp. of W. Orange, 416 N.J. Super. 354, 365 (App. Div. 2010) (citing R. 4:67-5); Courier News, 358 N.J. Super. at 378.

Exceptions to an executor's account are "a vehicle for determining the propriety of the executor's statement of assets and claims for allowance. Consequently, it is only the conduct of the executor, not the conduct of others, that is properly before the court." Perry, 288 N.J. Super. at 229. Although "[a] trustee has a duty to deal impartially with all beneficiaries and to protect all of their interests," first and foremost a "trustee has a duty to ensure that the estate is distributed in accordance with the testator's wishes." In Re Tr. for the Benefit of Duke, 305 N.J. Super. 408, 439-40 (Ch. Div. 1995), aff'd, 305 N.J. Super. 407 (App. Div. 1997); see also N.J.S.A. 3B:31-56 (imposing duty of impartiality on trustee). "In all instances, the language of the trust document is determinative." In re Tr. Agreement Dated Dec. 20, 1961, by & between Johnson & Hoffman, Lienhard & Perry, 399 N.J. Super. 237, 259 (App. Div. 2006); see also N.J.S.A. 3B:3-33.1(b) (declaring that the intention of the settlor as expressed in the trust controls).

Still,

> [n]otwithstanding the breadth of discretion granted to a trustee in the terms of the trust, including the use of such terms as "absolute," "sole," or "uncontrolled," the trustee shall exercise a discretionary power in good

9

faith and in accordance with the terms and purposes of the trust and the interests of the beneficiaries.

[N.J.S.A. 3B:31-68.]

"Under the Restatement (Third) of Trusts, '[t]he terms of trusts usually provide some standards or guidelines concerning the purposes the settlor ha[d] in mind in creating a discretionary interest.'" Tannen v. Tannen, 416 N.J. Super. 248, 269 (App. Div. 2010) (alterations in original) (quoting Restatement (Third) of Trusts § 50 cmt. d (Am. L. Inst. 2003)). When the trust's terms refer to the beneficiary's "'accustomed manner of living,'" as here,

> it would not be reasonable . . . or even a result contemplated by the settlor . . . for the trustee to provide only bare essentials for a beneficiary who had enjoyed a relatively comfortable lifestyle. . . . The standard ordinarily entitles a beneficiary to distributions sufficient for accustomed living expenses, extending to such items as regular mortgage payments, property taxes, suitable health insurance or care, existing programs of life and property insurance, and continuation of accustomed patterns of vacation and of charitable and family giving.
>
> [Id. at 270 (omissions in original) (emphasis omitted) (quoting Restatement (Third) of Trusts § 50, cmt. d(2)).]

Our Supreme Court has described an action to settle an account as a proceeding that "involves a line-by-line review on the exceptions to an accounting." Higgins, 205 N.J. at 229 (citing R. 4:87-1(a)).

"The object of an exception to a master's report is to specify the objections which the exceptant makes, either to the whole report or to specified parts thereof, with some statement of the grounds on which the exception is based. Exceptions which state no reason for criticism of the whole report, specify no items of which the exceptant complains, and no particulars wherein the master is alleged to have erred, cannot be entertained."

[In re Est. of Herrmann, 127 N.J. Eq. 65, 68-69 (Prerog. Ct. 1939) (quoting Merritt v. Jordan, 65 N.J. Eq. 772, 773 (E. & A. 1903)).]

As indicated in In re Estate of Oliver, "[t]he rule is well settled that in all matters of charge against the accountant the burden of proof is upon the exceptant. But in matters of discharge the burden is upon the accountant." 3 N.J. Misc. 453, 463 (Orphans' Ct. 1925) (citation omitted) (citing Kirby v. Coles, 15 N.J.L. 441, 444 (1836)). The decision to approve the final accounting is reviewed for an abuse of discretion. In re Acct. of Ex'rs of Koretzky, 8 N.J. 506, 535 (1951). An abuse of discretion occurs "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. I.N.S., 779 F.2d 1260, 1265 (7th Cir. 1985)).

Here, we discern no abuse of discretion on the part of Judge De Angelis and no basis to intervene. We agree with the judge that Whitenack exercised her discretion in making principal distributions to Ping in accordance with the terms of the Trust. Peter's exceptions, which were predominantly levelled against Catherine's rather than Whitenack's conduct, were insufficient as a matter of law and properly rejected by the judge in summary fashion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office

CLERK OF THE APPELLATE DIVISION

A-3675-22