837 A.2d 1081

ANTHONY AND GERALDINE VASTANO, PLAINTIFFS–APPEL-
LANTS, v. GARY ALGEIER; RAND, ALGEIER, TOSTI & WOOD-
RUFF, P.C.; DAVID B. RAND; ROBERT M. TOSTI; ROBERT B.
WOODRUFF; CARY J. FRIEZE AND RAND, ALGEIER, TOSTI,
WOODRUFF & FRIEZE, DEFENDANTS–RESPONDENTS, AND
JOHN DOES (1–10), DEFENDANTS.

Argued October 7, 2003—Decided December 18, 2003.

*Steven D. Cahn* argued the cause for appellants (*Cahn & Parra,* attorneys).

*Christopher J. Carey* argued the cause for respondents (*Graham, Curtin & Sheridan,* attorneys; *Patrick B. Minter,* on the brief).

Justice ALBIN delivered the opinion of the Court.

In this legal malpractice case, we must determine when the clock began to run on the statute of limitations. The discovery rule provides that a cause of action accrues when a client suffers actual damages and knows or should reasonably know that the lawyer has breached a professional duty owed to the client. Applying that standard, the trial court found that plaintiffs failed to file their complaint within the six-year limitations period and granted defendants' motion for summary judgment. The Appellate Division upheld that ruling. We now affirm.

I.

In reviewing the propriety of a grant of summary judgment in favor of defendants, we must view the evidence in the light most favorable to plaintiffs, the non-moving parties. *Brill v. Guardian Life Ins. Co. of Am.,* 142 *N.J.* 520, 540, 666 *A.2d* 146

(1995). In February 1986, plaintiff Anthony Vastano suffered injuries when his automobile was involved in an accident with a commercial truck. He and his wife, Geraldine, retained Gary Algeier, Esq., who filed a negligence action against the truck's owners. The case was bifurcated for separate trials on liability and damages. In the liability trial, a jury returned a verdict in favor of plaintiffs, who were found not to bear any fault for the accident. In the damages trial, which concluded on November 13, 1989, a jury awarded $41,400 in total to plaintiffs, $38,650 for Anthony Vastano and $2,750 for Geraldine Vastano on her *per quod* claim. On February 5, 1990, the trial court granted plaintiffs' motion for a new trial on damages based on defense counsel's allegedly improper issuance of a subpoena and use of Anthony Vastano's medical records. On January 30, 1991, the Appellate Division reversed the trial court's grant of a new trial and reinstated the damages award. This Court denied plaintiffs' petition for certification.

On December 23, 1996, plaintiffs, then represented by attorney Jack Frost, filed a civil complaint against Algeier, his law firm, and his partners, asserting two theories of legal malpractice. First, they allege that Algeier's negligence in failing to provide discovery led to the court barring crucial testimony from their expert witnesses, which ultimately resulted in a disappointingly low damages award. At the damages trial, Algeier intended to call three witnesses: a physician and a vocational expert to prove that Vastano was permanently disabled and unable to work, and an economist to prove Vastano's current and future lost wages. That well-intentioned plan fell apart in the execution.

Although Dr. Ruth, the economist, testified without objection to Vastano's lost wages, the defense did not overlook Algeier's discovery lapses. After Mr. Goodman, the vocational expert, was called to the stand and gave his name and job description, defense counsel objected on the ground that Algeier had never provided any medical expert report describing the permanency of Vastano's injuries. Algeier possessed reports prepared by Dr. Paul J.

Hirsch that would have provided the link between Vastano's injuries and his claimed inability to work, but Algeier inexplicably neglected to provide them in discovery. In response to that discovery violation, the trial court barred any testimony from Mr. Goodman on Vastano's occupational limitations and any testimony from Dr. Hirsch on the subject of the permanency of Vastano's injuries. As a consequence, plaintiffs were unable to establish through expert testimony that Vastano's injuries rendered him unable to resume gainful employment. Without the foundational testimony of those two expert witnesses, the lost-wages testimony of the economist was rendered virtually meaningless. Defense counsel capitalized on the devastating domino effect of Algeier's discovery violation by arguing in summation that plaintiffs failed to prove that Vastano suffered economic damages. Plaintiffs assert that the defense stratagem worked and that Algeier's professional errors resulted in the jury awarding the inadequate sum of $41,400 for their losses.

Second, plaintiffs contend that Algeier violated his professional duty to his clients by failing to communicate a settlement offer during the damages trial that was several times higher than the jury award. See RPC 1.4(a) ("A lawyer shall keep a client reasonably informed about the status of a matter...."); RPC 1.2(a) ("A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter."). During trial, defendants tendered a settlement offer in the amount of $185,000 to Algeier. That offer was presented by Algeier to plaintiffs and rejected. Plaintiffs complain, however, that Algeier did not tell them that defendants placed the $185,000 settlement offer back on the table during jury deliberations. Plaintiffs did not learn of the renewed offer until sometime after the Appellate Division reinstated the damages award on January 30, 1991, when their new attorney found a reference to it in a footnote in the truck owners' appellate brief. Plaintiffs claim that by the start of jury deliberations, they knew the case was going badly and would have accepted the offer at that time. They assert that Algeier, by

withholding the settlement offer, deprived them of the opportunity to resolve the case at a multiple of the actual jury award.

Defendants moved for summary judgment on the ground that plaintiffs did not file the malpractice action within the statute of limitations. The lawsuit was filed more than six years after the jury rendered its verdict on damages—November 13, 1989—and more than six years after plaintiffs took possession of their file containing the brief that mentioned the settlement offer—November 15, 1990. The trial court granted summary judgment, reasoning that a cause of action for legal malpractice accrues when the client suffers actual damages and discovers or should reasonably discover the facts supporting the claim. The court held, with respect to Algeier's derelict trial performance, that the statute of limitations began to run upon the return of the unsatisfactory damages award and, with respect to the "uncommunicated settlement offer," when plaintiffs took possession of their file from Algeier.

The Appellate Division affirmed in an unpublished opinion. We granted plaintiffs' petition for certification. 175 *N.J.* 431, 815 A.2d 478 (2003). We affirm, although for slightly different reasons than those expressed by the courts below.

## II.

Plaintiffs argue that the trial court's grant of a new trial on damages postponed the accrual of their cause of action until the Appellate Division later reversed and reinstated the damages verdict on January 30, 1991. Plaintiffs also argue that they should not be charged with constructive knowledge of the uncommunicated settlement offer from the moment they took possession of their case file on November 15, 1990. Rather, they contend that a cause of action did not accrue until their new attorney found the settlement offer in the file, sometime after January 30, 1991, or, alternatively, within a reasonable period of time after they took possession of the file. Plaintiffs urge this Court to remand for a hearing to determine when it would have been reasonable for

them to have discovered the unconveyed settlement offer. We conclude that the six-year statute of limitations in this case provided plaintiffs with ample time to bring their claims. We decline to broaden the equitable protections to plaintiffs beyond those provided by the discovery rule. *See Grunwald v. Bronkesh,* 131 *N.J.* 483, 621 *A.*2d 459 (1993) (holding that discovery rule applies in legal malpractice actions). Accordingly, we hold that plaintiffs' malpractice claims are barred by the statute of limitations.

*N.J.S.A.* 2A:14–1 requires that a legal malpractice action commence within six years from the accrual of the cause of action. *Grunwald, supra,* 131 *N.J.* at 499, 621 *A.*2d 459; *McGrogan v. Till,* 167 *N.J.* 414, 419, 424–26, 771 *A.*2d 1187 (2001); *Olds v. Donnelly,* 150 *N.J.* 424, 440, 696 *A.*2d 633 (1997). Ordinarily, a cause of action "accrues when an attorney's breach of professional duty proximately causes a plaintiff's damages." *Grunwald, supra,* 131 *N.J.* at 492, 621 *A.*2d 459. We have recognized, however, the unfairness of an inflexible application of the statute of limitations when a client would not reasonably be aware of "the underlying factual basis for a cause of action" to file a timely complaint. *Id.* at 492–93, 621 *A.*2d 459. To guard against that inequity, we have applied the discovery rule in those cases in which the injury or wrong is not readily ascertainable through means of reasonable diligence. *Id.* at 492–94, 621 *A.*2d 459; *see also Olds, supra,* 150 *N.J.* at 436–37, 696 *A.*2d 633. We understand that in some circumstances a client may not be able to detect the essential facts of a malpractice claim with ease or speed because of the complexity of the issues or proceedings, or because of the special nature of the attorney-client relationship. *Grunwald, supra,* 131 *N.J.* at 493–94, 621 *A.*2d 459. Accordingly, the statute of limitations does not commence until "the client suffers actual damage and discovers, or through the use of reasonable diligence should discover, the facts essential to the malpractice claim." *Id.* at 494, 621 *A.*2d 459.

In *Grunwald,* we applied those principles. In that case, the plaintiff retained the defendant attorney and his law firm (also a

defendant) to negotiate the sale of property to Resorts International Hotel and Casino, Inc. *Id.* at 487–88, 621 *A.*2d 459. The plaintiff alleged that the defendant attorney advised him that Resorts had entered into an enforceable contract to buy the property. *Id.* at 488, 621 *A.*2d 459. Relying on that advice, the plaintiff bypassed another opportunity to develop the property. When Resorts refused to purchase the property, the plaintiff filed suit for specific performance and, alternatively, breach of contract. The Chancery Division held in favor of Resorts, finding the contract unenforceable. The Appellate Division affirmed. The plaintiff then filed a legal malpractice action more than six years after the Chancery Division's adverse ruling, but less than six years after the Appellate Division's affirmance.

The Appellate Division in *Grunwald* held that the plaintiff's claim was not time barred because he did not have a legally cognizable injury until the adverse judgment was affirmed on appeal. *Id.* at 489, 621 *A.*2d 459. The court reasoned that until that time his damages were speculative. *Ibid.* We rejected that argument and concluded that the cause of action accrued when the plaintiff received the adverse ruling in the Chancery Division because at that time he clearly knew or should have known that he was harmed by his attorney's negligent advice. *Id.* at 500, 621 *A.*2d 459. We recognized, as a matter of policy, that delaying the accrual date of the malpractice action until completion of the appellate process would frustrate the goals of ensuring fairness to defendants and stimulating the diligent prosecution of claims before they grow stale. *Id.* at 496–97, 621 *A.*2d 459. The collateral price of delay is that during a protracted appeals process memories may fade, witnesses disappear, and evidence vanish. *Id.* at 497, 621 *A.*2d 459.

■ In applying the principles of *Grunwald* to this case, we must determine when plaintiffs had reason to know of Algeier's discovery derelictions. As noted, those derelictions resulted in the trial court barring testimony concerning the permanency of Vasta-

no's injuries, which, in turn, rendered Algeier unable to prove economic damages.

Plaintiffs admitted in their interrogatory answers that they "were very active participants in the preparation of their case, discussed in detail all doctors reports with Mr. Algeier and the relevancy of each doctor and their reports." Plaintiffs had first-hand knowledge that their theory of the case, which Algeier was entrusted to present, was not advanced in court. Plaintiffs were in court and witnessed Algeier's aborted effort to admit the testimony of the vocational expert, Mr. Goodman. Moreover, at deposition, Anthony Vastano testified that he thought "something [was] fishy" when Mr. Goodman was barred from testifying. He acknowledged that he was aware of the import of Algeier's trial fumbles and understood that the failure to call critical expert witnesses affected the outcome of the damages verdict. He expressed concern that the absence of Mr. Goodman's testimony and that of Dr. Hirsch on the subject of the permanency of his injuries affected the outcome of his case. What plaintiffs considered as a paltry damages verdict gave credence to their concerns that Algeier had mishandled the trial.

Plaintiffs registered their obvious dissatisfaction with Algeier when they discharged him and took their file to another lawyer. They did so, according to plaintiffs' counsel who appeared before this Court, because they wanted their substituted attorney "to try the case for the second time *correctly*." Plaintiffs' interrogatory answers also reveal that they knew before they discharged Algeier that their attorney's failure to submit expert reports was not the result of strategy, but neglect. Sometime after the grant of a new trial on February 5, 1990, and before they took possession of their file on November 15, 1990, plaintiffs told Algeier "to be sure to forward the reports of [Dr. Hirsch], to the defendant."

Plaintiffs complain that the true significance of Algeier's failings were not evident at trial because some of the court's rulings were made at sidebar. Even so, by November 15, 1990, plaintiffs and their new attorney had possession of the file and the trial tran-

scripts. As conceded by Geraldine Vastano, those transcripts clearly revealed that Algeier violated his discovery obligations, which caused the court to bar evidence concerning her husband's economic damages. By November 15, 1990, through the exercise of reasonable diligence, plaintiffs knew or should have known of the consequences of Algeier's failure to supply discovery and that his professional errors were a likely cause of the "insufficient" damages verdict. Plaintiffs had six years to file their claim from that date, and yet, they did not do so. The filing of their claim on December 23, 1996, was beyond the limitations period.

The record does not suggest that Algeier's alleged concealment of his malpractice derailed plaintiffs in their efforts to act timely. The unraveling of Algeier's trial plan occurred in court, in the very presence of plaintiffs. Although we do not excuse Algeier's efforts to downplay his blunders by assuring plaintiffs that the case was on course, we note that Algeier's unconvincing spin on what happened in court did not deceive his clients, who discharged him after he won the new trial motion and before the Appellate Division reversal.

In another effort to expand the statute of limitations, plaintiffs advance the theory that the trial court's grant of a new trial effectively wiped the slate clean and extinguished any damages they suffered. They argue that their damages were speculative until the Appellate Division reinstated the adverse jury award. We disagree.

Plaintiffs suffered damages on November 13, 1989, when the jury returned an inadequate damages award. That was so, even though plaintiffs did not become aware of the essential facts underlying their claim until a year later, after the grant of a new trial. The uncertain future of the "new trial" became evident by the Appellate Division's reversal and reinstatement of the damages award. Even if the Appellate Division had affirmed the grant of a new trial, at a minimum, plaintiffs would have suffered the additional costs of prosecuting their case a second time. *See Grunwald, supra*, 131 *N.J.* at 495, 621 *A.*2d 459 ("[A] client may

suffer damages, in the form of attorney's fees, before a court has announced its decision in the underlying action."). Plaintiffs' counsel has represented to us that this case involved a contingency fee agreement. Under those circumstances, presumably, a new trial would not alter the calculation of counsel fees. Nevertheless, in a typical contingency fee arrangement, expert fees and other chargeable costs are borne mostly by the client. *See R.* 1:21-7(d) (stating that permissible fees shall be computed "after deducting disbursements in connection with the institution and prosecution of the claim"). That much of plaintiffs' damages *potentially* could have been reduced or even extinguished after a new trial did not alter the additional costs that would have been incurred by plaintiffs in having to go to trial yet again. Plaintiffs had a legal right to institute and maintain a malpractice cause of action as of November 15, 1990, the day they took possession of their file.

In *Grunwald*, at the time of the adverse verdict, the plaintiff knew the essential facts underlying his claim, whereas, here, plaintiffs knew those facts only at the time they took possession of the file, a year after the adverse verdict. We see no meaningful distinction for purposes of deciding when damages have been suffered between an adverse verdict subject to appeal, as in *Grunwald*, and an adverse verdict subject to a grant of a new trial and also a further appeal. In both cases, the full extent of damages would not be known during the appellate process. *See Grunwald, supra,* 131 *N.J.* at 495, 621 *A.*2d 459 ("It is not necessary that all or even the greater part of the damages have to occur before the cause of action arises.") (internal citations and quotation marks omitted).

We recognized in *Grunwald* that potential difficulties might arise from a rule requiring a plaintiff to file a legal malpractice claim while the underlying action is still pending. *Id.* at 499, 621 *A.*2d 459. Rather than toll the statute of limitations, we decided that the better rule was to have the client file the malpractice complaint and move to stay those proceedings pending the outcome of the underlying litigation. *Ibid.* We are mindful, howev-

er, that the discovery process in the malpractice case may have to proceed to preserve testimony and evidence. We leave it to the trial courts to determine whether a stay is appropriate in a particular case.

### III.

Next, we must determine when plaintiffs learned the essential facts to support their claim that Algeier failed to communicate the final settlement offer to them. Algeier's alleged failure to communicate the $185,000 offer clearly constituted a breach of a duty from which a jury could find injury. The critical question is when did plaintiffs know or have reason to know about the offer. Plaintiffs did not *actually* learn that Algeier neglected to communicate the offer until some time after January 30, 1991, the date that the Appellate Division reversed the trial court's new trial order. Defendants argue that plaintiffs should be charged with imputed knowledge of the settlement offer as of November 15, 1990, the date that they took possession of their case file. Defendants contend that on that date plaintiffs possessed the information necessary to form the basis of their malpractice action, and had six years in which to file the claim. We agree.

We understood in *Grunwald, supra*, that a plaintiff's ability to discover the facts underlying a malpractice claim may be frustrated by an attorney who keeps critical information from him. 131 *N.J.* at 494, 621 *A.*2d 459 (noting attorneys' opportunity to conceal or misrepresent material facts tending to show malpractice in violation of their fiduciary duty to "render full and fair disclosure of all material facts to the client"). That concern was not implicated here once plaintiffs obtained possession of their case file. Plaintiffs did not have an "inability readily to detect the necessary facts." *Id.* at 493, 621 *A.*2d 459. On the contrary, they had the means to discover the malpractice through the exercise of reasonable diligence. A plaintiff may not gain actual knowledge of malpractice on the day he takes possession of the relevant documents because of the size of a file or the complexity of documents.

The accrual date, however, is set in motion when the essential facts of the malpractice claim are reasonably discoverable. *Id.* at 494, 621 *A.*2d 459. The accrual of the cause of action is not governed by the date when plaintiffs *actually* learned of the uncommunicated settlement offer if that information was reasonably discoverable at an earlier time. We conclude that when plaintiffs took their file they possessed all the information necessary to reveal malpractice without resort to the interpretative assistance of an expert.

Plaintiffs took their file to another attorney while their case was pending before the Appellate Division. As a result of the procedural posture of this case, plaintiffs or their attorneys were directed to the appellate documents. One would have expected plaintiffs or their new attorneys to have read the appellate briefs and to have discovered in the footnote the unconveyed settlement offer. Finding a reference to the settlement offer did not require sifting through the file. We note that disclosing a settlement offer in an appellate brief ordinarily would be highly inappropriate, *see generally N.J.R.E.* 408, and in this case plaintiffs' attorney suggested to this Court that the reference was intended to "poison" the appellate panel against his clients. The footnote should have stood out boldly on the page. In light of the statute's liberal limitations period, we decline in this case to graft an additional grace period beyond the dictates of the discovery rule or to embark on a fact-sensitive analysis based on the thickness of plaintiffs' file. There may be cases in which it would be unfair to conclude that the contents of an extraordinarily large file were reasonably discoverable on the day the client took possession of the file. This is not such a case.

## IV.

Giving plaintiffs the benefit of the discovery rule, they failed to file their cause of action within the six-year statute of limitations. Their complaint, therefore, was time barred. Accordingly, we affirm the Appellate Division.

*For affirmance*—Chief Justice PORITZ and Justices LONG, VERNIERO, LaVECCHIA, ZAZZALI, ALBIN and WALLACE—7.

*Opposed*—None.