**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2888-19

DAVID SCHINDEL, individually
and as executor of the estate of
ARNOLD SCHINDEL, deceased,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

GARY FEITLIN, ESQ.,

      Defendant-Respondent/
      Cross-Appellant,

and

GARY FEITLIN, ESQ.,

      Third-Party Plaintiff,

v.

HINDY O'BRIEN,[1]

---

[1] O'Brien has not participated in this appeal or cross-appeal, and the parties do not raise any arguments regarding O'Brien.

Third-Party Defendant
-Respondent.

_____

Argued February 22, 2021 – Decided June 11, 2021

Before Judges Messano, Hoffman, and Smith.

On appeal from the Superior Court of New Jersey, Law
Division, Bergen County, Docket No. L-3017-19.

Robert W. McAndrew argued the cause for appellant
(McAndrew Vuotto, LLC, attorneys; Robert W.
McAndrew, of counsel and on the briefs; Michael R.
McAndrew, on the brief).

Jeffrey S. Leonard argued the cause for respondent
(Lewis Brisbois Bisgaard & Smith, LLP, attorneys;
Meredith Kaplan Stoma, of counsel; Jeffrey S. Leonard,
on the briefs).

PER CURIAM

Plaintiff David Schindel is the son of Arnold Schindel. Pursuant to a July

2014 will, Arnold made specific monetary bequests to his son and to a friend,

Hindy O'Brien, a woman Arnold befriended and who was not a relative. The

will bequeathed the bulk of Arnold's estate to David, and designated David and

O'Brien as co-executors.[2] A second December 2015 will, among other things,

bequeathed Arnold's residuary estate in equal shares to plaintiff and O'Brien. A

_____

[2] We apologize for the informality of using first names, but we do so to avoid
any confusion.

third May 2016 will contained a number of specific bequests, including $25,000 to plaintiff, bequeathed the bulk of the residue of the estate to O'Brien and designated her as executrix of the will. Defendant Gary Feitlin, a New Jersey attorney, drafted all three wills for Arnold.

In November 2016, Arnold died, and O'Brien offered the May 2016 will to probate; plaintiff filed a caveat and litigation ensued (the Probate Case). In his answer and counterclaim, plaintiff alleged that Arnold lacked the testamentary capacity to have executed the May 2016 will, and it was the product of O'Brien's undue influence. Plaintiff affirmatively sought to admit the July 2014 will to probate and an order designating him sole executor of the estate.

Plaintiff's probate counsel deposed defendant, who was not attorney of record for O'Brien or the estate in the Probate Case and was represented by his partner at the deposition. As to some questions, defendant generally asserted attorney-client privilege, claiming he was serving as O'Brien's attorney regarding administration of Arnold's estate and was "co-counsel" in the litigation; plaintiff's probate counsel did not seek judicial intervention to settle the issue. When defendant requested compensation for his attendance at two

3

days of deposition, plaintiff's probate's counsel refused based on defendant's assertion that he was "co-counsel" in the Probate Case.

Plaintiff and O'Brien entered a settlement agreement (the Release), which by its terms released the attorneys for the parties from any and all claims or causes of action arising from or pertaining to the Probate Case, including those claims "which could have been asserted" in the Probate Case. The court entered an order in June 2018 probating the July 2014 will, enforcing the terms of the settlement, and dismissing the litigation.

Plaintiff then filed this complaint against defendant, alleging legal malpractice. Plaintiff claimed that when defendant prepared the May 2016 will, he either knew or should have known that Arnold lacked testamentary capacity or was subjected to O'Brien's undue influence.

Defendant moved to dismiss the complaint based on the Release. The Law Division judge's August 21, 2019 order denied defendant's motion without prejudice. Defendant then filed his answer and a third-party complaint against O'Brien for contribution and indemnification. When O'Brien moved to dismiss the third-party complaint, defendant filed a cross-motion seeking dismissal of plaintiff's complaint pursuant to the entire controversy doctrine (ECD). After

A-2888-19

oral argument, relying primarily on the reasoning of an unpublished decision from our court, the judge granted both motions.

Plaintiff moved for reconsideration, which the judge denied. In his written statement of reasons, the judge said that he had not relied upon the Release in granting defendant's motion to dismiss pursuant to the ECD or in denying plaintiff's motion for reconsideration. Nonetheless, the judge noted that plaintiff's probate attorney had "accepted [defendant's] representation that he was co-counsel for O'Brien" in the Probate Case, and that the "clear . . . language releases the parties . . . and attorneys . . . from liability."

Plaintiff appeals. He contends that the ECD does not apply to proceedings in probate, and, even if it does, given the doctrine's equitable nature, the ECD should not bar his complaint because defendant has not suffered substantial prejudice. Plaintiff also argues that when denying his motion for reconsideration, the judge erroneously concluded the malpractice action had accrued prior to or contemporaneously with the Probate Case, and plaintiff made a strategic choice not to file the claim. Alternatively, plaintiff contends the judge should have applied the discovery rule and held a Lopez[3] hearing to ascertain the accrual date.

---

[3] Lopez v. Swyer, 62 N.J. 267 (1973).

5

In opposing plaintiff's arguments and urging us to affirm, defendant contends the ECD applies in probate proceedings, and he has suffered substantial prejudice because of plaintiff's failure to press his malpractice claim at the same time he litigated the Probate Case. In his cross-appeal, defendant argues that the judge was wrong to deny his initial motion to dismiss, because defendant served as co-counsel for O'Brien in the Probate Case, and the Release's language is clear and unambiguous. As a result of the settlement, defendant contends plaintiff released all claims he may have had against defendant sounding in legal malpractice.

In opposition to the cross-appeal, plaintiff contends the judge properly denied defendant's motion to dismiss based on the terms of the Release, given the lack of any evidence regarding the parties' intent in executing the Release. He also argues that public policy demands any release of potential malpractice claim be a "specific and knowing" relinquishment.

We have considered the arguments and affirm.

I.

The ECD reflects a "long-held preference that related claims and matters arising among related parties be adjudicated together rather than in separate, successive, fragmented, or piecemeal litigation." Kent Motor Cars, Inc. v.

6

Reynolds & Reynolds Co., 207 N.J. 428, 443 (2011). As codified in Rule 4:30A, the ECD "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." Wadeer v. N.J. Mfrs. Ins. Co., 220 N.J. 591, 604–05 (2015) (quoting Highland Lakes Country Club & Cmty. Ass'n v. Nicastro, 201 N.J. 123, 125 (2009)).

In its current iteration, Rule 4:30A does not mandate the joinder of parties. Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 4:30A (2021). However, Rule 4:5-1(b)(2) requires a party to certify in his initial pleading "the names of any non-party who should be joined in the action . . . or who is subject to joinder . . . because of potential liability to any party on the basis of the same transactional facts." (emphasis added). The disclosure requirement ensures that the "ultimate authority to control the joinder of parties and claims remains with the court; the parties may not choose to withhold related aspects of a claim from consideration." Kent Motor Cars, 207 N.J. at 446 (citing Hobart Bros. Co. v. Nat'l Union Fire Ins. Co., 354 N.J. Super. 229, 240–41 (App. Div. 2002)). The court may dismiss a successive action brought by a party who failed to comply with the Rule if "the failure of compliance was inexcusable and the right of the

undisclosed party to defend the successive action has been <u>substantially</u> <u>prejudiced</u> by not having been identified in the prior action." <u>R.</u> 4:5-1(b)(2) (emphases added); <u>see</u> <u>Alpha Beauty Distribs., Inc. v. Winn-Dixie Stores, Inc.</u>, 425 N.J. Super. 94, 101 (App. Div. 2012) (explaining the <u>Rule</u>'s limitations regarding dismissal of a "successive action").

"The [ECD] . . . is constrained by principles of equity. It 'does not apply to unknown or unaccrued claims.'" <u>Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, PC</u>, 237 N.J. 91, 99 (2019) (quoting <u>Wadeer</u>, 220 N.J. at 606). Additionally, a party "may avoid the [ECD] by demonstrating that the prior forum did not afford 'a fair and reasonable opportunity to have fully litigated' the . . . claim." <u>Ibid.</u> (quoting <u>Gelber v. Zito P'ship</u>, 147 N.J. 561, 565 (1997)). "In considering whether application of the doctrine is fair, courts should consider fairness to the court system as a whole, as well as to all parties." <u>Wadeer</u>, 220 N.J. at 605 (citing <u>DiTrolio v. Antiles</u>, 142 N.J. 253, 273–74 (1995)).

Plaintiff admittedly did not comply with <u>Rule</u> 4:5-1(b)(2) when he filed his initial pleading in the Probate Case but argues it was unnecessary because defendant "had no material interest in the outcome of that proceeding[,]" and "was a fact witness; nothing more, nothing less." However, in considering

application of the ECD, a court's "initial inquiry is whether [the multiple claims] 'arise from related facts or the same transaction or series of transactions.'" Dimitrakopoulos, 237 N.J. at 109 (quoting DiTrolio, 142 N.J. at 267). "The [ECD] does not mandate that successive claims share common legal issues in order for the doctrine to bar a subsequent action." Ibid. (citing Wadeer, 220 N.J. at 605; DiTrolio, 142 N.J. at 271). Here, plaintiff's malpractice complaint had two specific claims: defendant knew or should have known that Arnold lacked testamentary capacity when he executed the May 2016 will; or, alternatively, defendant knew or should have known that O'Brien had exerted undue influence over Arnold to materially change the disposition of his estate in her favor. Those are the exact same contentions plaintiff raised in the Probate Case, and it is indisputable that the two "distinct claims . . . arise from interrelated facts." Ibid. (quoting DiTrolio, 142 N.J. at 271).

As a corollary to this contention, plaintiff argues that his malpractice action did not accrue until after the Probate Case was settled, and, without further discovery, the judge made factual findings that plaintiff strategically delayed filing the malpractice case. Plaintiff argues the judge should have applied the discovery rule and held a Lopez hearing. The arguments lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

A-2888-19

It suffices to say the accrual date in the legal malpractice setting is when "the essential facts of the malpractice claim are reasonably discoverable" and the client "sustain[s] actual damage." Dimitrakopoulos, 237 N.J. at 116 (first quoting Vastano v. Algeier, 178 N.J. 230, 242 (2003), then citing Olds v. Donnelly, 150 N.J. 424, 437 (2012)). Plaintiff knew defendant had drafted all three wills, and he knew that the May 2016 will detrimentally affected plaintiff's share of the estate and his executorship. Plaintiff had standing to pursue a legal malpractice claim at that point in time. See Pivnick v. Beck, 326 N.J. Super. 474, 483 (App. Div. 1999) (rejecting the defendant attorney's argument that the plaintiff-intended beneficiary did not have standing to file legal malpractice claim based on alleged failure to express testator's intent in a will).

Plaintiff also argues that because the Probate Case was not the appropriate forum to assert his legal malpractice claim, the ECD cannot serve as a basis to dismiss his complaint. Plaintiff's contention is two-fold. He argues that the Court has carved out from the ECD legal malpractice claims that arise in the context of probate litigation. We disagree.

In support of the first prong of his argument, plaintiff relies primarily upon the Court's holding in Higgins v. Thurber, 205 N.J. 227 (2011). There, the trial court dismissed the plaintiffs' legal malpractice claim after the defendant-

attorney intervened at the last minute in a probate proceeding to settle the account of an estate trust formed by the plaintiffs' deceased father. Id. at 228–29. We reversed concluding the ECD did not apply, and the Court affirmed for the reasons cited in Judge Fisher's decision. Id. at 229 (citing Higgins v. Thurber, 413 N.J. Super. 1, 5 (App. Div. 2010)). The Court explained:

> An action to settle an account on an estate trust is a formalistic proceeding, unique to probate. See R. 4:87-1(a). Its stylized format involves a line-by-line review on the exceptions to an accounting. In the context of this and like proceedings in probate, the [ECD] is out of place. See Perry v. Tuzzio, 288 N.J. Super. 223, 229 (App. Div. 1996). The Appellate Division in the present case rightly detected that it would be anomalous to assume that Thurber's intervention in the specialized probate accounting proceeding that focused on the executor somehow converted the proceeding into an action binding as to any and all other potential actions in respect of other parties. . . . While it certainly may be permissible for a chancery court to expand a probate proceeding to encompass a claim of legal malpractice, that was not done here.
>
> [Ibid. (emphases added).]

The Court closed by stating that the ECD "generally ha[s] no place in probate proceedings, for the reasons expressed by Judge Pressler in Perry." Ibid.

Plaintiff's reliance on Higgins is misplaced because the initial proceeding (for ECD purposes) in that case was a summary accounting, a "formalistic

proceeding" in a "stylized format" that focused "on the executor." Ibid. The Probate Case here was plaintiff's full-scale assault on the 2016 will in which plaintiff's claims of competency and undue influence were subject to discovery and fully litigated prior to settlement. Moreover, the Court in Higgins explicitly recognized the appropriateness in some instances of "expand[ing] a probate proceeding to encompass a claim of legal malpractice." Ibid. This is especially so when the probate proceeding exceeds the scope of the court's summary review of an executor's accounting. In short, there is no carved-out exception from the ECD for probate proceedings. See, e.g., In re Estate of Gabrellian, 372 N.J. Super. 432, 444 (App. Div. 2004) (applying ECD to bar successive suits challenging will).

We also find unavailing plaintiff's claim that his right to a jury trial on his malpractice claim would be abrogated if he were forced to pursue it in the same forum as his challenge to the 2016 will. Clearly, the Court in Higgins found it "permissible" for a chancery court to expand the probate proceedings to include such a claim. 205 N.J. at 229. The Court has long recognized that the Chancery Division may conduct jury trials:

> Whether the action be brought in the Law Division or the Chancery Division, all issues of fact triable as of right by a jury shall be decided by a jury, unless the right to jury trial be waived . . . . It is within the

> contemplation of the Constitution and the rules that a jury trial may be had in the Chancery Division of the Superior Court . . . .
>
> [O'Neill v. Vreeland, 6 N.J. 158, 167–68 (1951).]

Our rules also permit a court on its own initiative to "try with an advisory jury any issue not triable of right by a jury." R. 4:35-2. The malpractice claim here could have been tried by a jury in the Chancery court, with the trial judge utilizing the jury strictly in an advisory capacity on the issues of testamentary capacity and undue influence. See, e.g., Chance v. McCann, 405 N.J. Super. 547, 570 n.9 (App. Div. 2009) (recognizing court's ability to "seek the guidance of the jury trying the substantive issues as an advisory jury" when deciding issue of laches which "must be made by the trial judge" (citing R. 4:35-2)); 5 N.J. Practice, Wills And Administration, § 137, at 349–50 (Alfred C. Clapp) (rev. 3d ed. 1982) (noting that although there is no right to a trial by jury in a probate action, the court on its own initiative "may try with an advisory jury any issue of fact not triable of right by a jury").

In sum, we reject plaintiff's assertions that his malpractice claim was unknown or had not yet accrued when he filed his counterclaim in the Probate Case, or that the Chancery Division, Probate Part, could not have provided him with a fair forum for disposition of his complaint against defendant. We

A-2888-19

conclude plaintiff's failure to assert the claim, or at least advise the court of "any non-party who should be joined in the action . . . or who is subject to joinder . . . because of potential liability to any party on the basis of the same transactional facts" as required by Rule 4:5-1(b)(2) was "inexcusable." Ibid.

Plaintiff argues that defendant suffered no substantial prejudice from this inexcusable failure. We have said that "[s]ubstantial prejudice in th[e] context [of Rule 4:5-1(b)(2)] means substantial prejudice in maintaining one's defense. Generally, that implies the loss of witnesses, the loss of evidence, fading memories, and the like." Mitchell v. Procini, PA, 331 N.J. Super. 445, 454 (App. Div. 2000) (citing Blank v. City of Elizabeth, 318 N.J. Super. 106, 114–15 (App. Div.), aff'd as mod., 162 N.J. 150 (1999)); see also Kent Motor Cars, 207 N.J. at 446 (citing Mitchell with approval).

However, a claim of substantial prejudice is not limited to the loss of available evidence and proofs needed to mount a defense; substantial prejudice may result from a party's inexcusable failure and the resulting "potential impact of the particular legal framework in which the claims in th[e] litigation have been brought." Kent Motor Cars, 207 N.J. at 448. For example, in Kent Motor Cars, the Court found no "substantial prejudice" to the defendant resulted from the loss of emails and other evidence after the initial litigation. Id. at 448–49.

However, the Court concluded non-compliance with Rule 4:5-1(b)(2) resulted in substantial prejudice to the defendant, which now faced exposure "to a trebling of damages already trebled" in the preceding litigation, "as well as to a trebling of attorneys' fees." Id. at 450.

In Gelber, the Court recognized that "[t]he notice requirements of Rule 4:5-1 require conduct on the part of attorneys for reasons not limited to joinder of actions. Joinder is but one goal of the [ECD]." 147 N.J. at 566. In that case, the plaintiff homeowners breached their continuing duty to notify other parties and the court of other pending litigation or arbitration pursuant to Rule 4:5-1. Id. at 563–64. While their malpractice lawsuit against the defendant architect was pending, the plaintiffs successfully obtained an arbitration award against the contractor, who made the renovations that were the subject of the suit against the architect. Ibid. The defendant claimed that the plaintiffs were attempting to "double dip." Id. at 564.

The Court noted that had the architect been informed of the pending arbitration, it "might have chosen to invoke the arbitration clause in its own contract." Id. at 565. It found prejudice where the "failure to give notice deprived both the [defendant] and the court of the opportunity to . . . manage or otherwise coordinate the two proceedings." Id. at 566. This "warrant[ed] a

measured application of the [ECD]," requiring a remand for the trial court to dismiss the plaintiffs' claims except "those . . . against the architect that are entirely factually separable from claims related to work performed by the contractor." Id. at 566, 569 (emphasis added).

Here, plaintiff contends defendant suffered no substantial prejudice from the failure to bring the malpractice claim in conjunction with the will contest. At oral argument before the Law Division judge, counsel noted, for example, that much of the necessary discovery had already taken place.[4]

Defendant, however, argues that in addition to the inherent unfairness of now having to answer plaintiff's malpractice allegations after already being deposed for two days in the Probate Case, he is substantially prejudiced by the current posture of the litigation. For example, if successful, plaintiff's claim for damages would potentially include attorney's fees for both the Probate Case and the malpractice case. Additionally, plaintiff's counsel noted in oral argument before the Law Division judge that he would have a claim for damages that

---

[4] In his brief, defendant asserts that plaintiff's counsel "admitted at the oral arguments [before the Law Division judge] that the decision to hold back the legal malpractice claim against [defendant] caused [defendant] substantial prejudice." We have carefully reviewed the transcript of the arguments; no such admission was ever made by plaintiff's counsel. We admonish defense counsel for this mischaracterization of the record.

resulted from the settlement reached with O'Brien, to the extent it diminished plaintiff's share of the estate, increased O'Brien's share from that set out in the 2014 will or required plaintiff to expend sums to settle the estate and have the 2014 will probated. We need not divine the full nature and quantum of claimed damages which plaintiff will assert; however, since he was not a party in the Probate Case, defendant had no say in fashioning the settlement and the terms of the Release. Most importantly, he had no ability to make sure the Release expressly applied to him, and that plaintiff waived any and all claims against defendant.

"The 'polestar of the application of the [ECD] is judicial "fairness."'" Wadeer, 220 N.J. at 605 (quoting DiTrolio, 142 N.J. at 272). "Put simply, '[f]airness in the application of the [ECD] focuses on the litigation posture of the respective parties and whether all of their claims and defenses could be most soundly and appropriately litigated and disposed of in a single comprehensive adjudication.'" Id. at 606 (first alteration in original) (quoting DiTrolio, 142 N.J. at 277). In our opinion, defendant has been substantially prejudiced by "the particular legal framework in which the claims in this litigation have been brought." Kent Motor Cars, 207 N.J. at 448.

We affirm the Law Division's February 14, 2020 order dismissing plaintiff's complaint.

II.

Given this conclusion, we need not decide the cross-appeal which challenges the judge's interlocutory August 2019 order denying defendant's motion to dismiss plaintiff's complaint based on the Release. However, we take this opportunity to address the procedural aspects of what occurred to dissuade any similar recurrence in our trial courts.

In his oral decision denying defendant's motion to dismiss based on the Release, the judge properly recognized that defendant was relying on "matters outside the pleading[s]," Rule 4:6-2(e), and applied summary judgment standards. Ibid. The record before him at that time was quite limited. It contained the Release and order from the Probate Case, some of defendant's deposition testimony in that litigation, the letter from plaintiff's counsel in the Probate Case refusing to compensate defendant for his appearance at depositions based on assertion of the attorney-client privilege, and two letters defendant wrote to third parties as representing O'Brien in her capacity as the named representative of Arnold's estate. Notably, defendant never raised the release as

an affirmative defense in his answer and third-party complaint.  See R. 4:5-4 (requiring a responsive pleading to "specifically and separately [with] a statement of facts" raise certain affirmative defenses, including "release").

Plaintiff countered with a certification, citing other portions of the deposition testimony in which defendant clearly stated he was representing the estate, not O'Brien.  Plaintiff noted that defendant was represented by separate counsel at the deposition.  Plaintiff categorically stated that he never understood defendant to be representing O'Brien in the Probate Case and never intended to release any claims he may have had against defendant when he settled the Probate Case.

Based on the record then before him, the judge reasoned:

> I can't tell right now who a party was to the probate matter.  The attorneys that are released are the attorneys for the parties and I don't know if the Estate is considered a party or not.  I'm led to believe it is not. It's the people who are trying to probate the [w]ill.
>
> . . . .
>
> I don't know what the intent was here. . . .  It is . . . vague enough for me to say I'm not granting at this time.

When defendant subsequently moved to dismiss the complaint based on the ECD, he offered no further argument that the Release included him within

19                                                                                    A-2888-19

its terms. O'Brien's counsel premised her argument to dismiss the third-party complaint entirely on the Release, and, in so doing, alluded to defendant's status as "co-counsel" in the Probate Case.

The parties accommodated our post-argument request and filed a supplemental joint appendix that included their filings in support of and in opposition to defendant's motion to dismiss based on the ECD. Defendant's motion brief makes no argument regarding the Release. In fact, at oral argument, defense counsel acknowledged the judge's earlier decision was "law of the case," and he never sought reconsideration of the August 2019 order.

Plaintiff never addressed the Release in his motion for reconsideration of the order dismissing the complaint based on the ECD. For unexplained reasons, the judge nevertheless included in his written decision: "[T]he court observes (on subsequent reflection) and restates that plaintiff's probate counsel accepted [defendant's] representation that he was co-counsel for O'Brien. That being said, the clear release language releases . . . [defendant] from liability." The judge did not, however, issue an order reversing his earlier order denying defendant's motion to dismiss based on the terms of the Release.

Clearly, "where a litigation has not terminated, an interlocutory order is always subject to revision where the judge believes it would be just to do so."

A-2888-19

Lombardi v. Masso, 207 N.J. 517, 536 (2011). However, "where a judge is inclined to revisit a prior interlocutory order, what is critical is that he provide the parties a fair opportunity to be heard on the subject." Id. at 537. That did not happen here. To the extent the judge "on subsequent reflection" was considering additional evidence in the motion record developed through O'Brien's motion to dismiss or the argument of counsel on that motion, it was improper to do so without notice to the parties.

However, "it is well-settled that appeals are taken from orders and judgments and not from opinions, oral decisions, informal written decisions, or reasons given for the ultimate conclusion." Hayes v. Delamotte, 231 N.J. 373, 387 (2018) (quoting Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199 (2001)). The only order before us on cross-appeal is the August 2019 order denying defendant's motion to dismiss without prejudice, and we review that based solely on what was before the judge at that time. See Ji v. Palmer, 333 N.J. Super. 451, 463–64 (App. Div. 2000) (noting an appellate court limits it review to the motion record (citing Bilotti v. Accurate Forming Corp., 39 N.J. 184, 188 (1963))).

"[A] release is merely a form of contract and the general rules that apply to contract interpretation apply to releases." Sweeney v. Sweeney, 405 N.J.

Super. 586, 597 (App. Div. 2009) (alteration in original) (quoting Domanske v. Rapid-Am. Corp., 330 N.J. Super. 241, 246 (App. Div. 2000)). "A release is effective only as to the parties executing it in their individual or precise representative capacities and only as to the cause of action therein specified." Pressler & Verniero, cmt. 32.2 on R. 4:5-4.

We need not expound too much on the critical preliminary issue, i.e., was defendant an attorney for a party in the Probate Case? Whether an attorney-client relationship exists is a factual determination, Froom v. Perel, 377 N.J. Super. 298, 310–12 (App. Div. 2005), and the relationship may arise by implication, even when the attorney's representation is not expressly "articulated, in writing or speech." In re Palmieri, 76 N.J. 51, 58–59 (1978).

We apply the same standard the motion judge applied when deciding defendant's motion to dismiss based on the Release. Globe Motor Co. v. Igdalev, 225 N.J. 469, 479 (2016). Like "the trial court[, we] must 'consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party,'" here, plaintiff, "are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). Based on the

22

evidence in the motion record at the time, the judge properly denied the motion to dismiss based on the Release.

Affirmed on the appeal and cross-appeal.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2888-19