**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3427-23

DANIEL J. SYSOL and
YAXY SYSOL,

      Plaintiff-Appellant,

v.

WILLIAM G. SANCHEZ,

      Defendant-Respondent.

_____

Argued October 7, 2025 – Decided October 31, 2025

Before Judges Sumners and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-2892-23.

Eric P. LeBoeuf (LeBoeuf Law, LLC) argued the cause for appellant.

Neil A. Tortora argued the cause for respondent (Morrison Mahoney LLP, attorneys; Neil A. Tortora, on the brief).

PER CURIAM

This appeal arises from a civil action in which plaintiffs Daniel J. Sysol and Yaxy Sysol claim their former attorney, defendant William G. Sanchez, committed malpractice when he represented them in the 2015 sale of their house. That transaction led the buyers of the property to bring a fraud action (the "Chancery matter") against plaintiffs in December 2017. The Chancery matter was settled in March 2023 for $12,500. Following the settlement, plaintiffs initiated the present suit against Sanchez, claiming breach of contract, legal malpractice, and severe emotional and traumatic distress. Plaintiffs appeal the trial court's June 24, 2024 order dismissing their complaint with prejudice. The trial court held that plaintiffs' claims were barred by the applicable six-year statute of limitations. The court also observed that plaintiffs should have impleaded defendant into the Chancery matter and brought their claims against him in that forum under the entire controversy doctrine (ECD).

After reviewing the record in light of the governing legal principles, we conclude that the ECD does not provide an independent basis to dismiss plaintiffs' complaint with prejudice. With respect to the trial court's statute of limitations ruling, we reverse and remand for the court to consider plaintiffs' contention that the statute of limitations was equitably tolled when defendant's

2

insurance carrier instructed plaintiffs' counsel to wait until plaintiffs incurred actual damages in the Chancery matter before initiating a malpractice action.

I.

We discern the following procedural history and pertinent facts from the record.  In 2015, plaintiffs retained defendant to represent them in the sale of their residential property to buyers Israel and Nesia Lichtenstein.  Before closing, plaintiffs informed the Lichtensteins that the property included a shed that plaintiffs had constructed without permits.  The Lichtensteins agreed to purchase the property despite the lack of permits, and plaintiffs asked their attorney, defendant, to memorialize this agreement so that plaintiffs would be protected from liability after closing.  Defendant told plaintiffs that he spoke to the Lichtensteins' attorney, Gerald J. Klein, and the two agreed the Lichtensteins would purchase the property without acquiring back permits.  However, on August 26, 2015, defendant executed an addendum to the contract of sale, prepared by Klein, which stated, "Seller represents that . . . Seller will close out all permits or violations before Closing."

On November 25, 2015, plaintiffs and the Lichtensteins closed on the property.  Defendant advised plaintiffs that the purported agreement between

3

defendant and Klein—that the Lichtensteins agreed to purchase the property without back permits—was documented in the closing file notes.

After the closing, the Township notified the Lichtensteins that the shed on the property was constructed without required permits and in violation of the building code. Upon further investigation, the Lichtensteins also discovered that the shed was located five feet onto county property. On February 23, 2017, the Lichtensteins' new attorney, Harvey L. York, sent a demand letter to plaintiffs describing these defects and requesting compensation of approximately $95,000. The letter alleged that plaintiffs and defendant had made fraudulent representations in the closing documents, stating:

> At the time of closing, you executed various documents. Those documents contained attorney representations that the building had been constructed in accordance with the applicable Ordinances and Statutes and was in fact located on the property which was being conveyed to the Lichtenstein[s]. In reviewing all of the applicable information, it is clear that you deliberately defrauded our clients. At the time of the closing you knew that no building permits had been obtained and that the building was improperly located. . . . The purpose of this letter is to place you on notice that our clients demand payment of their damages. . . . We suggest you contact an attorney for immediate representation.

Plaintiffs forwarded the demand letter to defendant. After speaking with the Lichtensteins' attorney, defendant informed plaintiffs that they had indeed

4

represented to the Lichtensteins that the shed was within the property lines, but that in fact the shed was on county property.[1] In response, plaintiffs asked defendant "how . . . he protected us during this transaction," and defendant replied that he did not know the shed was on county property and that the plaintiffs may have some exposure to civil litigation. Defendant advised plaintiffs to retain separate counsel with regard to the post-sale dispute between plaintiffs and the Lichtensteins.

In early March 2017, plaintiffs retained a new attorney, Peter T. Seems, to represent them in their dispute with the Lichtensteins. On March 21, 2017, defendant sent Seems a complete copy of his file for the property sale to the Lichtensteins.

On December 8, 2017, the Lichtensteins filed a complaint against plaintiffs (the Chancery matter) based on allegedly fraudulent misrepresentations about the property. On March 12, 2018, plaintiffs' counsel in the Chancery matter, Gregory Heizler, informed defendant that his "tortious action/inaction . . . has been identified as a substantial contributing factor in [plaintiffs'] loss" and that he must notify his liability insurer. Defendant did not

---

[1] The addendum to the contract of sale that defendant executed on August 26, 2015 states, "Seller represents that, to the best of Seller's knowledge . . . All improvements to the property fall within the Property's boundary lines."

respond, and on June 28, 2018, Heizler informed defendant that if he did not respond within ten days, plaintiffs would add an affirmative malpractice claim against him in the Chancery matter. Heizler then contacted defendant's malpractice insurance carrier, Allianz, to file a claim. According to plaintiffs, Allianz informed Heizler that it "could not continue with" such a claim until plaintiffs sustained damages in the Chancery matter. Plaintiffs never impleaded defendant into the Chancery matter. On March 3, 2023, plaintiffs and the Lichtensteins settled the Chancery matter, with plaintiffs agreeing to pay the Lichtensteins $12,500.

On December 20, 2023, plaintiffs filed the present complaint against defendant, alleging breach of contract, legal malpractice, and "severe emotional and traumatic distress" based on defendant's failure to adequately investigate and document the permitting and property boundary issues. Specifically, plaintiffs alleged that defendant "failed to formally record or document any information communicated to him by [plaintiffs] to the buyer's attorney or make any official record, legal changes, modifications or provide any legal safeguards as instructed by [plaintiffs]."

On March 13, 2024, defendant filed a motion to dismiss for failure to state a claim pursuant to Rule 4:6-2(e), arguing that plaintiffs' claims were barred by

6

the ECD as well as the six-year statute of limitations for legal malpractice actions. On May 5, 2024, plaintiffs filed an opposition to defendant's motion to dismiss. Oral argument was held on May 28, 2024.

On June 24, 2024, the court granted defendant's motion and dismissed the complaint with prejudice. The court made factual findings that "[o]n March 9, [2017], [defendant] received an email that [Mr. Seems] would be representing [plaintiffs]" and "[o]n March 21, 2017 . . . [defendant] sent his file to Mr. Seems." The court then determined that plaintiffs' claims accrued by March 21, 2017, at the latest, and held that plaintiffs' December 20, 2023 malpractice action was therefore barred by the six-year statute of limitations.[2]

This appeal followed. Plaintiffs contend that the trial court erred: (1) in dismissing the complaint with prejudice because the complaint set forth sufficient allegations to support a claim; (2) by dismissing the complaint pursuant to the statute of limitations because the statute was equitably tolled; and (3) by dismissing plaintiffs' complaint pursuant to the ECD.

___

[2] The court's order also states: "Plaintiff[s] did not join Defendant in the Chancery matter" but does not clearly indicate whether this was an additional independent basis for dismissing the malpractice action with prejudice.

A-3427-23

## II.

We first address the threshold question of whether plaintiffs' complaint was properly dismissed because it was filed after the applicable statute of limitations had lapsed. Legal malpractice actions, which derive from the tort of negligence, are subject to a six-year statute of limitations. N.J.S.A. 2A:14-1; Grunwald v. Bronkesh, 131 N.J. 483, 492 (1993). Ordinarily, "a legal-malpractice action accrues when an attorney's breach of professional duty proximately causes a plaintiff's damages." Grunwald, 131 N.J. at 492. However, under the "discovery rule," a legal malpractice action will not accrue if the plaintiff "does not and cannot know the facts that constitute an actionable claim." Ibid. Instead, in legal malpractice cases, "the statute of limitations begins to run only when the client suffers actual damage and discovers, or through the use of reasonable diligence should discover, the facts essential to the malpractice claim." Id. at 494.

The trial court determined that plaintiffs' cause of action accrued in March 2017 and was therefore barred by the time the complaint was filed in December 2023. More specifically, the court held that plaintiffs suffered "actual damage" when they had to hire a new attorney in March 2017 to represent them in their dispute with the Lichtensteins. The court further found that plaintiffs discovered

A-3427-23

or should have discovered the facts essential to their claim, at the latest, when defendant sent his file to Seems in March 2017.

We agree with the trial court that the accrual date occurred more than six years before the malpractice suit was initiated. We note that the accrual date of a legal malpractice claim "is not necessarily the date on which the client actually knew the facts on which the malpractice claim is based; instead, that date 'is set in motion when the essential facts of the malpractice claim are reasonably discoverable.'" Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 116 (quoting Vastano v. Algeier, 178 N.J. 230, 242 (2003)); see also Grunwald, 131 N.J. at 493 ("The limitations period begins to run when a plaintiff knows or should know the facts underlying [the elements of a legal malpractice claim,] not necessarily when a plaintiff learns the legal effect of those facts.").

In Vastano, the plaintiffs alleged that their former attorney committed malpractice by failing to communicate a highly favorable settlement offer to them during the damages trial. 178 N.J. at 234. The plaintiffs first learned of the offer after they (and their new attorneys) received possession of the former attorney's case file, which included an appellate brief that mentioned the uncommunicated offer in a footnote. Ibid. Our Supreme Court held that, once

the plaintiffs received the former attorney's file, they had sufficient information to discover the basis of their malpractice claim:

> We conclude that when plaintiffs took their file they possessed all the information necessary to reveal malpractice without resort to the interpretative assistance of an expert. . . . One would have expected plaintiffs or their new attorneys to have read the appellate briefs and to have discovered in the footnote the unconveyed settlement offer. Finding a reference to the settlement offer did not require sifting through the file. . . . There may be cases in which it would be unfair to conclude that the contents of an extraordinarily large file were reasonably discoverable on the day the client took possession of the file. This is not such a case.
>
> [Id. at 242.]

Here, plaintiffs do not dispute that their new attorney received defendant's entire file in March 2017. Viewing the record in the light most favorable to plaintiffs, the evidence of defendant's alleged malpractice should have been reasonably discernible in the file Seems received.

Furthermore, there is additional undisputed evidence that plaintiffs knew or should have known the facts underlying their malpractice claim by the time Seems received the file, including (1) the February 2017 letter from the Lichtensteins' attorney, stating that the closing documents contained fraudulent "attorney representations," and (2) defendant's statement to plaintiff, a few days

later, that he (defendant) "did not know that the shed was on county property so [plaintiffs] may have some exposure to civil litigation." It is thus evident that plaintiffs had sufficient information to discover the basis of their malpractice claim, at the latest, once Seems received defendant's file.

Although we agree with the trial court's findings of fact and conclusions of law with respect to the accrual date, the court's written opinion does not address the concept of equitable tolling. In fairness, our review of the record shows that none of the pleadings use the phrase "equitable tolling." However, in their opposition to defendant's motion to dismiss, plaintiffs made factual allegations that form the crux of their equitable tolling argument on appeal. Specifically, they alleged that defendant's insurer, Allianz, told plaintiffs' attorney that Allianz "could not continue with a malpractice insurance claim until [plaintiffs] sustained damages . . . from a lawsuit." Plaintiffs further argue that the statute of limitations was equitably tolled because Allianz "actively misled" plaintiffs into believing that their malpractice action would not accrue until plaintiffs faced damages in the Chancery matter.

Equitable tolling is "traditionally reserved for limited occasions. These include: '(1) [if] the defendant has actively misled the plaintiff [or] (2) if the plaintiff has "in some extraordinary way" been prevented from asserting his

11

rights.'" F.H.U. v. A.C.U., 427 N.J. Super. 354, 379 (App. Div. 2012) (internal citations omitted). Typically, the doctrine is applied "where the complainant has been induced or tricked by his adversary's misconduct" into missing the filing deadline. Villalobos v. Fava, 342 N.J. Super. 38, 50 (App. Div. 2001) (quoting Dunn v. Borough of Mountainside, 301 N.J. Super. 262, 280 (App Div. 1997), certif. denied,. 153 N.J. 402 (1998)).

In Barron v. Gersten, we underscored the narrow scope and stringent standards of the equitable tolling doctrine, holding:

> A statute of limitations may be equitably tolled under very limited circumstances: "(1) [if] the defendant has actively misled the plaintiff, (2) if the plaintiff has 'in some extraordinary way' been prevented from asserting his [or her] rights, or (3) if the plaintiff has timely asserted his [or her] rights mistakenly in the wrong forum." F.H.U. v. A.C.U., 427 N.J. Super. 354, 379 (App. Div. 2012) (quoting Kocian v. Getty Refin. & Mktg. Co., 707 F.2d 748, 753 (3d Cir. 1983)). "Absent a showing of intentional inducement or trickery by a defendant, [equitable tolling] . . . should be applied sparingly and only in the rare situation where it is demanded by sound legal principles and in the interest of justice." Binder v. Price Waterhouse & Co., L.L.P., 393 N.J. Super. 304, 313 (App. Div. 2007) (quoting Freeman v. State, 347 N.J. Super. 11, 31 (App. Div. 2002)). "[E]quitable tolling requires plaintiffs to 'diligently pursue their claims' because although it 'affords relief from inflexible, harsh or unfair application of a statute of limitations,' [it] does not excuse claimants from exercising the reasonable insight

12

and diligence required to pursue their claims." Ibid. (quoting Freeman, 347 N.J. Super. at 31-32).

[472 N.J. Super. 572, 577 (App. Div. 2022) (alternations in original).]

Here, the trial court made no findings of fact or conclusions of law as to whether plaintiffs have demonstrated the sort of misconduct or extraordinary circumstances that would equitably toll the statute of limitations. We decline to exercise original jurisdiction on this fact-sensitive issue, see Rivera v. Union Prosecutor's Ofc., 250 N.J. 124, 146 (2022) (original jurisdiction should be exercised "sparingly . . . and is generally used when the record is adequately developed and no further fact-finding is needed") (internal citations omitted), and leave for the trial court to make findings in the first instance. To aid the trial court, we direct the parties to provide the court with their appellate submissions. We leave to the court's discretion whether to require supplemental submissions or whether to convene a hearing to address any disputed facts pertinent to whether the equitable tolling doctrine applies in this case. If the court determines that the statute of limitations was equitably tolled, it shall vacate the order dismissing plaintiffs' complaint with prejudice.

A-3427-23

# III.

We next address whether the ECD provides an independent basis upon which to dismiss plaintiffs' complaint with prejudice. In that event, a remand for the trial court to consider plaintiffs' equitable tolling argument would not be necessary, since the dismissal of the complaint with prejudice would be required even if the statute of limitations were tolled. As we have noted, the trial court's opinion does not clearly indicate whether the ECD provided alternate grounds to dismiss the complaint. See note 2. In any event, the law is clear that the doctrine in its current formulation does not apply here.

New Jersey's ECD is codified in Rule 4:30A. There is a history to the Court Rule that bears on this appeal. The ECD is a preclusive doctrine intended to encourage comprehensive and conclusive litigation determinations, avoid fragmentation of litigation, and promote fairness and judicial efficiency. See Pressler & Verniero, Current N.J. Court Rules, cmt. 1 on R. 4:30A (2026). "The doctrine was conceived as a claim-joinder mandate, requiring all parties in an action to raise in that action all transactionally related claims each had against any other whether assertable by complaint, counterclaim, or cross-claim." Ibid. (citations omitted). In Codgell v. Hospital Center at Orange, our Supreme Court extended the doctrine to include mandatory party joinder and not just claim

joinder involving the parties already in the case. 116 N.J. 7, 26 (1989). That extension to non-parties, however, "created both practical and conceptual difficulties in implementation and too many perceived instances of injustice." Pressler & Verniero, cmt. 1 on 4:30A. Accordingly, 1998 amendments to Rule 4:30A—which remain in effect today—eliminated mandatory party joinder under the ECD except in special situations not applicable here. Ibid.; see also C.P. v. Governing Body of Jehovah's Witnesses, 477 N.J. Super. 129, 140 (App. Div. 2023) (according pipeline retroactivity to the 1998 amendments). Thus, defendant's reliance on Cogdell and related cases is misplaced because those cases were abrogated by the 1998 amendments.

Simply stated, "[e]xcept in special situations involving both inexcusable conduct and substantial prejudice to the non-party resulting from omission from the first suit, successive actions against a person not a party to the first action are not precluded." Pressler & Verniero, cmt. 1 on 4:30A. Further, if a defendant does not provide "any specific instances of prejudice," they fail to show "substantial prejudice" under the exception. C.P., 477 N.J. Super. at 142.

Here, defendant has not asserted any specific claim that he would be substantially prejudiced by having to defend a malpractice claim now, as opposed to during the Chancery matter. Because he has not satisfied that

A-3427-23

prerequisite to invocation of the ECD, dismissal of plaintiffs' complaint against him pursuant to the doctrine is neither required nor appropriate.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

16