In the matter of the estate of HENRY V. HERRMANN, deceased.

[Decided May 11th, 1939.]

*Messrs. McCarter & English (Mr. George W. C. McCarter,* appearing), proctor for the exceptant.

*Mr. L. Edward Herrmann,* proctor for the respondent.

STEIN, VICE-ORDINARY.

C. Theodor Herrmann, administrator with the will annexed of Henry V. Herrmann, deceased, having filed his account, Grace Cranstoun Herrmann filed exceptions thereto.

On September 20th, 1938, on the motion of McCarter & English, proctors for the accountant, the matter was referred to Fredrick J. Waltzinger, Esq., one of the special masters of the court to hear and determine the validity of the exceptions filed and such exceptions, if any, that might be filed pursuant to leave granted to the exceptant and to report thereon to the court.

Upon the coming in of the master's report the accountant filed exceptions thereto, and the matter is now before the court on (1) the exceptions to the master's report; (2) accountant's motion (returnable before the court January 17th, 1939), to permit the account of the accountant to be amended, by setting off against the balance of $2,831.05 due from accountant, the sum of $2,640, with lawful interest thereon, said last mentioned sum being the total amount appearing from the account of the New Jersey Title Guarantee and Trust Company, temporary administrator of Henry V. Herrmann, as having been paid to annuitants and charged against income; and (3) the accountant's motion to strike out the exceptions filed to his account on the ground that Grace Cranstoun Herrmann "has no standing to except to the account."

I shall first dispose of the motion to strike the exceptions to the account.

The exceptant is listed with others in the second paragraph of accountant's petition as "possible remainderman for life," and is before the court *in invitum.* The order of reference to the special master to hear and report upon the exceptions was made by the court upon the motion of the proctors for the accountant, C. Theodor Herrmann. The notice to strike the exceptions was not made until the coming in of the master's report which report was submitted on the 23d day of

December, 1938, after lengthy hearings before the master had taken place. Morever, the ground advanced upon which the notice to strike so belatedly given by the proctor for the accountant to sustain his motion is that the gift to Grace Cranstoun Herrmann in testator's will is void under a proper construction of the will by reason of the rule against perpetuities and it is insisted that the court now pass upon and construe the will to such extent as may be necessary to pass upon the standing of the exceptant.

The object of exceptions to an account "is to secure a correct ascertainment of the amount of property remaining for distribution among those who may ultimately be found entitled to it, and therefore every person who can present a claim worth considering upon the final distribution is interested in the settlement of the account, and should be permitted to compel a full and accurate accounting." *Dunham* v. *Marsh (Court of Errors and Appeals)*, *52 N. J. Eq. 831; 31 Atl. Rep. 619.* The exceptant certainly has such a claim, it being admitted in the petition of the accountant which accompanied his account that the exceptant is a "possible remainderman for life." For the reason mentioned, the motion to strike the exceptions to the account is denied.

Upon the filing of the exceptions leave was granted exceptant to file amended exceptions with leave to accountant to amend his account, and thereupon exceptions to the account as amended were filed. The original exceptions as suggested by the proctor of accountant in his brief may well be disregarded since the amended exceptions and the exceptions to the amended account were considered by the master and reported upon by him.

Considering now the exceptions to the master's report, they are:

"1: The master sustained amended exception 1 (b), whereas he should not have sustained that exception, but on the contrary should have overruled the same, and sustained as valid each and all of the several payments made to W. Morton Carden and Tobias Klein, attacked by the said exception.

"2: The master sustained amended exception 1 (c), whereas he should have overruled the said exception.

"3: The master sustained amended exception 1 (d), whereas he should have overruled the said exception.

"4: The master sustained amended exception 1 (f), whereas he should have overruled the said exception.

"5: The master did not overrule amended exception 1 (i).

"6: The master sustained exceptions 1 (a) to the amended account, whereas he should have overruled the said exception.

"7: The master found and determined that the account should be restated, to include therein the sum of $4,086.53 or $4,081.35, for that the said items or either of them are not properly covered by any exception whatsoever filed to the account, and further for that there is not sufficient evidence that either of these items was in fact a debt owed by C. Theodor Herrmann, and further, for that the inclusion of these items or either of them comes as a surprise to the accountant, and he should not be charged therewith, without being permitted to take further testimony on the question, particularly as counsel for the exceptant, both in a motion previously made to this court and in his briefs before the master, treated this item as requiring a further exception for which he sought leave to file.

"8: The master sustained exception 1 (b) to the amended account, whereas he should have overruled the said exception."

Excluding the seventh exception, all of the exceptions are of the most general character. None of them states any reasons or ground of criticism of the master's action. "The object of an exception to a master's report is to specify the objections which the exceptant makes, either to the whole report or to specified parts thereof, with some statement of the grounds on which the exception is based. Exceptions which state no reason for criticism of the whole report, specify no items of which the exceptant complains, and no particulars wherein the master is alleged to have erred, cannot be entertained." *Merritt* v. *Jordon* (*Court of Errors and Appeals*), *65 N. J. Eq. 772; 60 Atl. Rep. 183; Hoagland*

v. *Saul, 53 Atl. Rep. 704; Riverside Apartment Corp.* v. *Capital Construction Co., 107 N. J. Eq. 405; 152 Atl. Rep. 763; affirmed, 110 N. J. Eq. 67; 158 Atl. Rep. 740.*

Although I am satisfied that the conclusions of fact by the master are fully supported by the evidence a brief review of the facts upon which the master based his findings will be helpful in understanding the various problems with which the master dealt.

As to exception 1 to the master's report, the master found as follows:

That $4,700 was paid to Morton Carden, Esq., a New York attorney, at various times over an eight-year period and that $381 was paid to Mr. Tobias Klein, certified public accountant, during the same period, all payments being made without court's approval. The master further found that vouchers for these payments were not in the files of the court although counsel stated that the vouchers had been filed with the register. The master further found as a fact from an analyzation of the duplicate bills presented by Mr. Carden that many of the services for which he made a charge covered items which were properly the duty of the administrator to perform and which did not require the services of an attorney. Many of these charges covered items for services to the administrator regarding the desirability of selling certain securities, various matters concerning his administrator's bond which arose by reason of his failure to co-operate with the bonding company and advice concerning the Great American Insurance Company stock which the accountant now alleges in his amended account is not an asset of this estate. The master further found that the administrator did not co-operate with his counsel; that he did not disclose the existence of a certain agreement made in 1906 which provided for a voluntary distribution of certain assets of the estate of Eliza Herrmann including the shares of the Great American Insurance Company, the ownership of which stock was the subject of one of the exceptions before the master. That the administrator admitted that he had used $2,800 of the *corpus* to which he was not entitled; that he kept no books; that it was impos-

sible to segregate from the bills presented those services which properly concern matters of the estate and those which were properly the duty of the administrator to perform; that the moneys paid to the accountant were necessitated by the failure to keep proper records and books; that Mr. Carden's bill also contained some items for which the accountant made a charge and that the accountant's services were made necessary by reason of the failure of the administrator to properly handle the estate and that no testimony was given by the accountant regarding the services which he performed. The master further found that the reasonableness of the charges made by Mr. Carden did not determine their allowance or disallowance but that determination must be based upon proof that the services were necessary to the proper administration of the estate.

As to exceptions 2 and 3 to the master's report, the master found as follows:

That these two exceptions covered the same problem except that the names of the annuitants and the amount paid to each annuitant differed. The master found as a fact that four court orders had been entered directing the payment to the annuitants out of income and that the present administrator had applied for two of these orders and through his then proctor had consented to the entry of the other two. The master also found that although the present administrator had appealed from the decree allowing the account of the administrator *pendente lite,* he did not in that appeal except to the entry of the four above mentioned orders or challenged the payments made thereunder. The master further found that the present administrator had accepted the balance of the income of this estate after the payment to the annuitants had been deducted therefrom. The master further found that the present administrator could have either appealed from the orders providing for such payment out of income or he could have applied for a modification of said orders and that having permitted the orders to remain unchallenged for a long period of time, he was estopped from changing his position in his account covering an administration of almost ten years, he

having filed no other account during that period. And again the master further found that the will in this case made no provision for the payment of these annuities and that he, the master, was without authority to construe the will regarding the payment of annuities and that this court having entered orders concerning the same, the master was bound to recognize the orders as providing the proper method of paying the annuities in the case before him.

As to exception 4 to the master's report, the master found as follows:

That this exception dealt with the failure to include in the *corpus* of the estate the proceeds arising from the sale of certain stock rights of the Great American Insurance Company and that this exception related to exception 1 (b) of the exceptions to the amended account which latter exception dealt with the ownership of the stock of the Great American Insurance Company. The master found as a fact that the shares of stock in question were the property of the estate of the present decedent and that, therefore, the proceeds of the sale of any stock rights belong to the estate. A summary of the master's findings as to the ownership of the stock of the Great American Insurance Company is briefly reviewed under exception 8 to the master's report *infra*.

As to exception 5 to the master's report, the master did not overrule amended exception 1 (i) but he did find as follows:

That this exception was a proper one if the accountant is to be surcharged for the payment made to counsel, for the moneys paid to the annuitants, for certain assets in the form of an obligation of himself to the estate, for the proceeds of the sale of stock rights of the Great American Insurance Company and for the funds which the accountant admits he wrongfully paid to himself. The master found that by reason of these surcharges, it was necessary to allow this exception to the extent that this account should be restated to show completely the amount of money or assets which came into the accountant's hands for which he has not accounted.

As to exception 6 to the master's report, the master found as follows:

That the present accountant had given a receipt to the administrator *pendente lite* for all of the assets of the estate including stocks, bonds, furniture, cash on hand and accounts receivable and that this receipt included an item of $4,086.35 which was an obligation of the present administrator to the decedent; that the present accountant had not collected this amount of money from himself and that he did not show that it could not be collected; that it appeared to be a *bona fide* debt and that, therefore, the accountant was chargeable with the same. The master further found that there was a discrepancy of $5.50 in this item, because the receipt given by the accountant to the administrator *pendente lite* showed a different value for certain furniture over and above that value which the accountant included in his account.

As to exception 7 to the master's report, the master's findings recited under exception 6 in this opinion applies with equal force to exception 7 and in addition to the findings of the master briefly discussed under exception 6 above, the master also found:

That the administrator *pendente lite* considered this debt an asset of the estate and that the present accountant who was a party in interest to the accounting of the administrator *pendente lite* did not except to the inclusion of that debt in the account of the administrator *pendente lite* although he did file exceptions to other items in the account and that by his conduct he admitted that he was indebted to the present decedent who was his brother and that the present accountant was estopped after a ten-year period from changing his position regarding this item.

As to exception 8 to the master's report, the master found as follows:

That from the testimony and the written evidence produced before him certain stock certificates registered in the name of the estate of Theodore Herrmann who was the father of the present decedent was the property of the present decedent and therefore, a part of this estate for which the present accountant should account; that the present accountant had entered into a voluntary written agreement with the present

decedent in 1906 wherein and whereby the stock in question was allotted to the present decedent. The master further found that from 1906 to the date of the decedent's death he had included the income received from this stock in his books of account as his own property; that the administrator *pendente lite* had considered this stock to be an asset of the estate and had credited the income thereon to the income of this estate during its administration. The master further found that at the time that the administrator *pendente lite* delivered the certificates of stock to the present administrator there was attached thereto a memorandum indicating that the stock was the property of the decedent and explaining the reason why the certificates had never been actually transferred to his name. The master further found that the offer of the present accountant to account for these shares of stock in the estate of Theodore Herrmann of which estate the present accountant is also the administrator was not a sincere proposal because for more than ten years he had not done anything to acquire these shares of stock for the estate of Theodore Herrmann and that if he believed that these shares of stock belonged to that estate he had had ample time to litigate their ownership. The master further found that the present administrator had originally included the income of these shares of stock in his account as administrator and that he had also consulted his attorney, Mr. Carden, many times regarding the right to sell this stock and that Mr. Carden had billed the estate for these services which bills the administrator had paid from funds of this estate. The master further found that the present accountant could give no satisfactory explanation for his failure to recall the agreement which he made in 1906 with the present decedent nor could he satisfactorily explain the loss of the memorandum which was attached to the certificates of stock at the time that they were delivered to him by the administrator *pendente lite;* that for a period of more than ten years the present accountant first as a life tenant during the administration by the administrator *pendente lite* and second as administrator had done nothing to indicate that these shares of stock did not belong to this estate.

A master's report is not to be disturbed unless he erred in matter of law or, plainly, as to the facts. The master had first-hand opportunity to value and weigh the evidence and his findings of fact are in every instance sustained by the evidence.

Finding no error, the exceptions to the master's report will be overruled, with costs. *Wilson* v. *Sandall, 92 N. J. Eq. 130; 111 Atl. Rep. 322; affirmed, 92 N. J. Eq. 463; 113 Atl. Rep. 927; Zanzonico* v. *Zanzonico, 124 N. J. Eq. 477; 2 Atl. Rep. (2d) 597.*