**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0915-23

IN THE MATTER OF THE
LESLIE KAREN ROSS TRUST
UNDER THE LAST WILL AND
TESTAMENT OF HARRIET
ROSS, Deceased.

_____

Argued January 29, 2025 – Decided May 2, 2025

Before Judges Currier and Paganelli.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. P-000242-22.

Jeffrey Ross, appellant, argued the cause pro se.

Scott D. Jacobson argued the cause for respondent Carl Roth (Ferro Labella & Weiss LLC, attorneys; Scott D. Jacobson, on the brief).

PER CURIAM

In this estate matter, Jeffrey Ross (Jeffrey)[1] appeals from trial court orders dated: (1) October 6, 2022, approving an intermediate accounting and discharging Carl Roth (Roth) as Co-Trustee of Leslie Ross's (Leslie) trust; (2) March 7, 2023, denying Jeffrey's motion for reconsideration of the October order and awarding Roth attorney's and accounting fees, and commissions; and (3) September 6, 2023, denying Jeffrey's motion for reconsideration of the September order.[2] We affirm.[3]

In January 2012, Harriet Ross (Harriet) executed her Last Will and Testament (Will). At the time, she had two living adult children, Jeffrey and Leslie. The children survived Harriet's passing in December 2014.

The Will provided that Harriet gave the "rest, residue and remainder of [the] estate . . . to [her] Trustees, in trust, . . ., to be held in two separate trusts, one . . . for the benefit of L[eslie] . . ., and one . . . for the benefit of J[effrey]." Roth was appointed Co-Trustee of Leslie's trust in August 2018.

---

[1] Because this matter involves family members with the same surname, we use their first names. We intend no disrespect.

[2] We are familiar with the long history of litigation involving the family. See In re Estate of Ross, No. A-3757-20 (App. Div. Jan. 20, 2023), certif. denied, 257 N.J. 414 (2024); In re Estate of Ross, No. A-5237-17 (App. Div. Apr. 3, 2019).

[3] Leslie did not file a brief in the appeal.

Further, the Will provided:

> Upon the death of one of my children, my Trustees shall assign, transfer and pay over the then principal of his or her trust, and any income accrued but undistributed, to the trust created herein for my surviving child to be held as additional assets of the trust for the surviving child.

In addition, the Will provided:

> The corporate or other professional Co-Trustee may, but shall not be required to, at any time, and from time to time, file an account of its administration with a court of competent jurisdiction. Any professional Co-Trustee shall provide prior notice for such review, as well as acceptance unless disallowed by the court, by my respective child Co-Trustee. Prior to transferring any or all of the assets of each trust to a Successor professional Co-Trustee or to making complete distribution of trust principal, the professional Co-Trustee may require an approval of its account either by a court of competent jurisdiction or by such of the beneficiaries as it deems appropriate. All of the Co-Trustee's fees and expenses (including reasonable attorneys' fees) attributable to any such accounting and approval shall be submitted for review, as well as acceptance unless disallowed by the court by my respective child Co-Trustee prior to payment by the trust.

In May 2022, Roth filed a verified complaint for settlement of the intermediate account and his discharge as Co-Trustee of Leslie's Trust. Roth attached the intermediate accounting to the complaint. The complaint listed Jeffrey as a party interested in the accounting. The Bergen County Surrogate

"raised certain audit questions," that were answered by Roth and Leslie. Jeffrey filed exceptions to the accounting. The court heard the parties' oral arguments on September 22, 2022, and reserved its decision.

In an October 6, 2022 order, the trial court granted Roth's application to proceed summarily and approved: (1) the intermediate accounting; (2) income and corpus commissions; (3) accounting fees and costs; and (4) counsel fees and expenses. Further, the court discharged Roth and appointed a successor Co-Trust for Leslie's Trust.

The trial court issued a seventeen-page written opinion accompanying the order. The court noted that under Rule 4:67-5, a court is permitted to "try the action on the pleadings and affidavits and render a final judgment thereon," when "the affidavits show palpably that there is no genuine issue as to any material fact." The court stated that "Rule 4:67 summary actions are . . . designed 'to accomplish the salutary purpose of swiftly and effectively disposing of matters . . . .'"

Further, the trial court noted that "R[ule] 4:87-1 of the Court Rules set[] forth the procedure for settling an executor's accounts." The court noted that "[a]n action to settle an account on an estate trust is a formalistic proceeding, unique to probate."

The trial court, relying on controlling case law, found that Jeffrey did not have standing to file exceptions. The court cited In re Oathout's Estate, 25 N.J. Misc. 186 (Orphans' Ct. 1947); In re Bessemer Trust Co., 147 N.J. Super. 331, 346 (Ch. Div. 1976); and In re Walsh's Estate, 32 N.J. Super. 528, 534 (App. Div. 1954); for the proposition "that contingent remaindermen under a testamentary trust (such as Jeffrey) who are unaffected by allowances out of income or from payment of corpus commissions cannot file exceptions to such items in an accounting." The court concluded that "Jeffrey, a contingent remainder beneficiary of the Leslie Trust, ha[d] no current entitlement to the Leslie Trust income. As such, it c[ould ]not be said with certainty that Jeffrey would be adversely affected by the payments of the income or corpus commissions outlined in the Intermediate Account."[4]

In addition, the trial court concluded that Jeffrey did not have standing because "the terms of the Leslie Trust only provide the 'respective child Co-Trustee' (Leslie) with the explicit authority to approve the accounting prior to

---

[4] We note Harriet executed her Will and passed away before the adoption of the Uniform Trust Code, N.J.S.A. 3B:31-1 to -84, became effective. Therefore, the Code's definitional description of a "'[b]eneficiary,' as it relates to trust beneficiaries, includes a person, . . . who has any present or future interest, vested or contingent," is inapplicable. N.J.S.A. 3B:31-3(1).

payment by the Leslie Trust. [Therefore, t]he plain language of the Will . . . d[id] not suggest that approval [wa]s required from both Leslie and Jeffrey."

Despite finding Jeffrey did not have standing, the court

> reviewed the exceptions [filed] by . . . Jeffrey and [wa]s satisfied with the Intermediate Account and that the 'exceptions' raise[d] no genuine disputes. The Intermediate Account accurately detail[ed] the assets, expenses, and liabilities of the Leslie Trust. The co-trustees, Roth and Leslie, adequately answered the audit questions posed by the Bergen County Surrogate and paid the audit fee.

The trial court concluded Jeffrey's

> exceptions [we]re flawed and fail[ed] pursuant to R[ule] 4:87-8 of the Court Rules, which state[], "[t]he exceptions shall state particularly the item or omission excepted to, the modification sought in the account and the reasons for the modification." In addition, "an exception may be stricken because of its insufficiency in law." Id. Jeffrey's exceptions are insufficient as a matter of law because they relate to style rather than substance, concern matters of fiduciary discretion, or do not relate to the accounting.

> [(Fifth alteration in original).]

Jeffrey filed a motion for reconsideration and a stay of the October order. Roth filed an affidavit of service and requested: (1) $108,590.50 for attorney's fees; (2) $4,906.54 for expenses; (3) $2,039.53 for trustee commissions on the income and corpus; and (4) $17,649.57 for accounting fees.

6

In December 2022, the trial court heard the parties' oral arguments, and reserved its opinion.[5] In a February 2023 oral opinion, the court applied the correct standard for reconsideration and denied Jeffrey's requested relief, because the court had considered the issues in the October written opinion and had "rejected" Jeffrey's arguments. The judge noted "disagreement with a ruling is not [a] valid ground for th[e] motion and reconsideration should[ no]t be sought merely because of dissatisfaction with a decision of the [c]ourt." The trial court also denied Jeffrey's request for a stay, concluding that Jeffrey failed to establish the factors necessary for that relief.

In conducting its analysis of the attorney's fees, the trial court applied the correct standards and deducted time for "inter-office communications and conferences"; preparation of the "[c]ertification of [s]ervices"; "research preparation"; and "forwarding of e[]mails"; and reduced the attorney's fees award to $93,277.54. The court awarded the expenses, commissions, and accounting fees. On March 7, 2023, the court entered a memorializing order.

The parties filed motions for reconsideration of the March order. In August 2023, the trial court heard the parties' oral arguments and issued an oral

---

[5] Due to a retirement, the motion was considered by a different judge.

 A-0915-23

opinion. The court applied the correct standard for reconsideration and denied all the requested relief.

On appeal, Jeffrey argues the trial court's conclusion that he lacked standing was "totally lacking in credibility, logic, facts, reality, NJ statutes, and relevant, legal case preceden[t]." Further, he asserts the trial court erred in approving the accounting because the accounting was "[f]lawed, mistaken, incomplete, and . . . fraudulent." Moreover, he contends he met the standard for reconsideration.

"Whether a party has standing to pursue a claim is a question of law subject to de novo review." Cherokee LCP Land, LLC v. City of Linden Plan. Bd., 234 N.J. 403, 414 (2018). "Our courts generally take a liberal view of standing . . . ." N.J. Dept. of Env't Prot. v. Exxon Mobil Corp., 453 N.J. Super. 272, 291 (App. Div. 2018). "But, standing is not automatic." Id. at 291-92. "To have standing to maintain an action before the court, a party must have a sufficient stake in the outcome, a real adverseness with respect to the subject matter, and a substantial likelihood of some harm if the decision is unfavorable." In re Project Authorization Under N.J. Reg. of Historic Places Act, 408 N.J. Super. 540, 555-56 (App. Div. 2009).

We review the trial court's decisions concerning the accounting, In re Koretzky's Est., 8 N.J. 506, 535 (1951); award of attorney's fees, Dickerson v. Camden Tr. Co., 1 N.J. 459, 468 (1949); and allowance of corpus commissions, In re Est. of Summerlyn, 327 N.J. Super. 269, 272 (App. Div. 2000); under the abuse of discretion standard. The same standard of review applies to a trial court's denial of a motion for reconsideration. See Granata v. Broderick, 446 N.J. Super. 449, 468 (App. Div. 2016).

An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

"Motions for reconsideration are granted only under very narrow circumstances:"

> Reconsideration should be used only for those cases which fall into that narrow corridor in which either (1) the Court has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the Court either did not consider, or failed to appreciate the significance of probative, competent evidence.

9

[Fusco v. Bd. of Educ. of City of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).]

Reconsideration "is not appropriate merely because a litigant is dissatisfied with a decision of the court or wishes to reargue." Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010).

Rule 4:87-8 governs exceptions to final accountings and allows an interested person to file written exceptions. The Rule requires "[t]he exceptions shall state particularly the item or omission excepted to, the modification sought in the account and the reasons for the modification. An exception may be stricken because of its insufficiency in law." R. 4:87-8.

Exceptions to an executor's account are "a vehicle for determining the propriety of the executor's statement of assets and claims for allowance." Perry v. Tuzzio, 288 N.J. Super. 223, 229 (App. Div. 1996). Our Supreme Court has described an action to settle an account as "a formalistic proceeding" that "involves a line-by-line review [of] the exceptions to an accounting." Higgins v. Thurber, 205 N.J. 227, 229 (2011).

Applying these well-established legal principles, we affirm. As to standing, the question was whether Jeffrey, as Co-Trustee of his trust or as the recipient of the funds from his trust, had standing to file exceptions to the

accounting filed for Leslie's trust. We note the accounting was not filed because Leslie had passed.

Instead, the accounting was filed merely to effectuate the discharge of Roth and the appointment of a successor Co-Trustee. Under these circumstances, the accounting is solely between Roth and Leslie. Jeffrey had no stake in the outcome, or real adverseness; nor was he harmed by the decision. See In re Project, 408 N.J. Super. at 555-56.

Further, because Jeffrey was not "entitled to" a "distribution," he could not "compel a full and accurate accounting," nor file exceptions to the accounting that was made. In re Estate of Herrmann, 127 N.J. Eq. 65, 67 (Prerog. Ct. 1939) (quoting Dunham v. Marsh, 52 N.J. Eq. 831, 832 (E. & A. 1894)). See also Walsh, 32 N.J. Super. at 534 ("[O]nly those entitled to the trust income have been damnified by the reduction of that income" and could "take exception.") (citations omitted).

Nonetheless, and putting the standing issue aside, we are convinced the trial court comprehensively considered the merits of Jeffrey's exceptions and found they lacked merit. Therefore, the court did not misuse its discretion in approving the accounting. Further, we conclude there was no misuse of discretion in awarding fees or commissions. In addition, because Jeffrey's

motions for reconsideration amounted to re-argument, as a result of his dissatisfaction with the court's rulings, we find no misuse of discretion in the denial of his motions for reconsideration.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-0915-23